J-S62043-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| MATTHEW ZALEDZIESKI | |
| Appellant | No. 325 EDA 2014 |

Appeal from the PCRA Order January 9, 2014
In the Court of Common Pleas of Monroe County
Criminal Division at No(s): CP-45-CR-0000678-1992

BEFORE:  ALLEN, J., OLSON, J., and OTT, J.

MEMORANDUM BY OTT, J.:                           **FILED APRIL 22, 2015**

Matthew Zaledzieski[1] appeals from the order entered in the Monroe County Court of Common Pleas, dated January 9, 2014, dismissing his first petition filed under the Post-Conviction Relief Act ("PCRA")."[2]  Zaledzieski seeks relief from the judgment of sentence of life imprisonment imposed on May 2, 1994, following his jury conviction of first-degree murder, aggravated

_____

[1]  As indicated by the PCRA court, the record contains various spellings of the appellant's last name as "Zaliedjieski,", "Zeledjieski," and "Zaledzieski." The last spelling is the only time a witness actually spelled the appellant's name on the record and therefore, like the PCRA court, we will utilize it in our discussion for consistency.  **See** PCRA Court Opinion, 1/9/2014, at 1 n.1.

[2]  42 Pa.C.S. §§ 9541-9546.

assault, and reckless endangerment of a person ("REAP").[3]  On appeal,

Zaledzieski raised a plethora of ineffective assistance of counsel claims.

Based on the following, we affirm.

The PCRA court set forth the underlying facts of this case as follows:

On July 15, 1992, in the early morning hours, [Zaledzieski], Todd Mastrobuoni, and John Lynch were driving through East Stroudsburg.  Lynch drove the car, while [Zaledzieski] was seated in the rear of the car, and Mastrobuoni was asleep in the front passenger seat after excessive drinking.  Lynch stopped the car in response to the hails of Neil Rappley, who asked for a ride. Lynch refused.  An argument ensued with Mr. Rappley, at the end of which [Zaledzieski] stabbed Mr. Rappley with a punch dagger.  As the victim attempted to flee, [Zaledzieski] chased Mr. Rappley and stabbed him seven more times.  Mastrobuoni was asleep throughout the entire incident.  Fleeing the scene, Lynch drove [Zaledzieski] home.  On the way they picked up Tina Worth, who saw [Zaledzieski] place what looked like a knife into his pocket.  [Zaledzieski] also stated how he had just stabbed a homeless man.  [Zaledzieski] discussed the incident with Lynch and Mastrobuoni, telling them to keep quiet about it.

[Zaledzieski], Lynch, and Mastrobuoni were all members of the 'skinheads organization.'  The Commonwealth never identified the murder weapon and no physical evidence linked [Zaledzieski] to the victim or the scene.

[Zaledzieski]'s version of the story is that he is actually innocent, that he was not present at the stabbing, and that it was mostly likely Lynch who committed the stabbing and implicated [Zaledzieski] to prevent his own prosecution.

PCRA Court Opinion, 1/9/2014, at 5-6.

On May 26, 1993, a jury convicted Zaledzieski of first-degree murder,

aggravated assault, and REAP.[4]  He was found not guilty of criminal

_____

[3]  18 Pa.C.S. §§ 2502(a), 2702(a), and 2705, respectively.

conspiracy.[5]  On May 2, 1994, the court sentenced him to life imprisonment without the possibility of parole.  Zaledzieski's judgment of sentence was affirmed on January 15, 1995, and his petition for allowance of appeal was denied on July 25, 1995.  **See Commonwealth v. Zeledjieski,** 660 A.2d 126 (Pa. Super. 1995) (unpublished memorandum), *appeal denied*, 663 A.2d 691 (Pa. 1995).

On June 12, 1995, while the petition for allowance of appeal was still pending before the Pennsylvania Supreme Court, Zaledzieski filed a *pro se* PCRA petition.  That same day, counsel, E. David Christine, Esq., was appointed to represent him.  On September 18, 1995, Zaledzieski filed a petition for appointment of a private investigator in aid of his PCRA petition, which was granted the same day.

On January 22, 1998, Christine filed a motion to withdraw as counsel, which was granted on January 30, 1998.  Stephen M. Higgins, Esq., then entered his appearance.  One year later, Higgins entered a *praecipe* to withdraw as counsel and J. Michael Farrell, Esq., entered his appearance the same day.

On July 14, 2003, Zaledzieski, with the assistance of Farrell, filed an amended PCRA petition.  On October 7, 2003, the Commonwealth filed its

*(Footnote Continued)* ——————————

[4]  At trial, Zaledzieski was represented by Andrew Hood, Esq.

[5]  18 Pa.C.S. 903(a)(1).

response to the amended petition. From this date until July of 2006, no other filings, hearings, or actions were taken by counsel or the PCRA court.

On July 6, 2006, Zaledzieski filed a reply to the Commonwealth's response. Almost one year later, on June 8, 2007, Farrell submitted a letter to the PCRA judge, asking the court to proceed with the matter. "No action was taken by the Court. At some point between this time and July 2012, [Zaledzieski]'s case was marked by the Clerk of Courts as closed on the docket. The reason the case was closed is not reflected in the record." PCRA Court Opinion, 1/9/2014, at 3.

On July 17, 2012, Zaledzieski filed a motion to reopen the case and the PCRA court scheduled a hearing for August 24, 2012. The Commonwealth filed a motion for continuance, which was granted, and the hearing was rescheduled for, and held on, September 24, 2012.

On October 16, 2012, the court granted Zaledzieski's motion to reopen the case, "holding that [Zaledzieski]'s petition was timely under the prior version of the Post-Conviction Relief Act in effect at the time of filing." *Id.* at 4. The PCRA evidentiary hearing was ultimately scheduled for May 28, 2013.

Prior to the hearing, on March 7, 2013, the Commonwealth filed a motion for reconsideration of the timeliness of Zaledzieski's PCRA petition. Four days later, the Commonwealth also filed a motion to dismiss pursuant

to 42 Pa.C.S. § 9543(b).[6]  A hearing was held on March 18, 2013, with respect to the Commonwealth's motion for reconsideration.  On May 9, 2013, the PCRA court entered an order and opinion, denying the Commonwealth's motion.

On May 28, 2013, the court held a hearing on the PCRA petition and the motion to dismiss.  The court held a second hearing on June 28, 2013, for further testimony on the issues.  On January 9, 2014, the PCRA court entered an order and opinion, denying both Zaledzieski's PCRA petition and the Commonwealth's motion to dismiss.  This timely appeal followed.[7]

_____

[6]  Section 9543(b) provides:

> (b) Exception. --Even if the petitioner has met the requirements of subsection (a), the petition shall be dismissed if it appears at any time that, because of delay in filing the petition, the Commonwealth has been prejudiced either in its ability to respond to the petition or in its ability to re-try the petitioner.  A petition may be dismissed due to delay in the filing by the petitioner only after a hearing upon a motion to dismiss.  This subsection does not apply if the petitioner shows that the petition is based on grounds of which the petitioner could not have discovered by the exercise of reasonable diligence before the delay became prejudicial to the Commonwealth.

42 Pa.C.S. § 9543(b).

[7]  On January 30, 2014, the PCRA court ordered Zaledzieski to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Following an extension granted when current PCRA counsel, Michael Wiseman, Esq., entered his appearance, Zaledzieski filed a concise statement on March 11, 2014.  The PCRA court issued an opinion pursuant to Pa.R.A.P. 1925(a) on March 19, 2014, incorporating by reference its January 9, 2014, opinion.

Preliminarily, we must determine if this appeal is properly before us. "Crucial to the determination of any PCRA appeal is the timeliness of the underlying petition. Thus, we must first determine whether the instant PCRA petition was timely filed." *Commonwealth v. Smith*, 35 A.3d 766, 768 (Pa. Super. 2011), *appeal denied*, 53 A.3d 757 (Pa. 2012).

> The PCRA timeliness requirement … is mandatory and jurisdictional in nature. *Commonwealth v. Taylor*, 933 A.2d 1035, 1038 (Pa. Super. 2007), *appeal denied,* 597 Pa. 715, 951 A.2d 1163 (2008) (citing *Commonwealth v. Murray*, 562 Pa. 1, 753 A.2d 201, 203 (2000)). The court cannot ignore a petition's untimeliness and reach the merits of the petition. *Id*.

*Commonwealth v. Taylor*, 67 A.3d 1245, 1248 (Pa. 2013). A PCRA petition must be filed within one year of the date the underlying judgment becomes final. 42 Pa.C.S. § 9545(b)(1). A judgment is deemed final "at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of time for seeking review." 42 Pa.C.S. § 9545(b)(3).

Here, Zaledzieski's petition for allowance of appeal with the Pennsylvania Supreme Court was denied on July 25, 1995. Therefore, under the current version of the Act, Zaledzieski's sentence became final on October 23, 1995, when his time to file a petition for *writ* of *certiorari* with the United States Supreme Court expired. *See* Sup. Ct. R. 13. Moreover, pursuant to Section 9545(b)(1), Zaledzieski had one year from the date his

judgment of sentence became final to file a PCRA petition. **See Taylor**, **supra**.[8] As noted above, on June 12, 1995, while the petition for allowance of appeal was still pending before the Pennsylvania Supreme Court, Zaledzieski filed a *pro se* PCRA petition. His appointed counsel did not file an amended PCRA petition until July 14, 2003.

The Commonwealth submits that because Zaledzieski filed his *pro se* petition while his petition for allowance of appeal was still pending before the Pennsylvania Supreme Court, it was premature and therefore, did not constitute a first PCRA petition.[9] **See** Commonwealth's Brief at 10. Moreover, according to the Commonwealth, the PCRA court was required to consider the amended PCRA petition as Zaledzieski's first petition. Further, because the amended petition was not filed until July of 2003, the Commonwealth states the petition was patently untimely and Zaledzieski failed to allege that any of the enumerated exceptions to the timeliness requirement applied. **Id.**

---

[8] There exists a *proviso* to the 1995 amendments to the PCRA that provides a grace period for petitioners whose judgments became final on or before the January 16, 1996 effective date of the amendments. However, the *proviso* applies to first PCRA petitions only, and the petition must be filed by January 16, 1997. **See Commonwealth v. Thomas**, 718 A.2d 326 (Pa. Super. 1998) (*en banc*).

[9] The Commonwealth relies on **Commonwealth v. Kubis**, 808 A.2d 196 (Pa. Super. 2002), **Commonwealth v. O'Neil**, 573 A.2d 1112 (Pa. Super. 1990), and **Commonwealth v. Fralic**, 625 A.2d 1249 (Pa. Super. 1993), to support its argument.

The PCRA court has thoroughly analyzed this issue in its October 16, 2012, opinion, finding the following:

> Under the 1995 PCRA, a PCRA Petition is untimely if it is filed during direct appeal, i.e. if the petition is premature. Com. v. Seay, 814 A.2d 1240, 1241 (Pa. Super. Ct. 2003) (holding premature PCRA Petition is untimely); Com v. Kubis, 808 A.2d 196, 198 n.4 (Pa. Super. Ct. 2002) (holding same).

> However, **under the Post Conviction Relief Act of 1988 ("1988 PCRA"), the jurisdictional time bar did not exist**. Postconviction Relief, Capital Unitary Review, 1995 Pa. Legis. Serv. Sp. Sess. No. 1 Act 1995-32 (S.B. 81) (SS1) (SS1) (Purdon's).[8]

> From 1982 to 1995, the legislature tinkered with Pennsylvania's system for post conviction relief. From 1982 until 1988, the Post Conviction Hearings Act of 1982 ("1982 PCHA") contemplated that petitioners would raise their claims during the pendency of direct appeal. Substitute Bail Commissioners, Wrongful Birth and Wrongful Life Actions, Post Conviction Relief, and Offenses Committed While Impersonating A Law Enforcement Officer, 1988 Pa. Legis. Serv. 1988-47 (Purdon).[9] The 1988 PCRA replaced or modified the 1982 PCHA and also permitted the raising of claims during direct appeal. Id. As discussed above, when the legislature amended the PCRA again in 1995, the 1995 PCRA did not permit the filing of a PCRA Petition until direct appeal had ended.

> [8] This contains the text of the 1988 PCRA, as well as the amendments by the 1995 PCRA. To find this on WestlawNext, see the credits at the bottom of 42 Pa.C.S.A. § 9545.

> [9] This contains the text of the 1982 PCHA, as well as the amendments by the 1988 PCRA.

> The 1995 PCRA was passed on November 17, 1995, and went into effect sixty days afterwards on January 16, 1996. Com. v. Voss, 838 A.2d 795, 799 (Pa. Super. Ct. 2003) (recognizing new statute and holding that, since the statute takes effect January 16, 1996, the operative deadline for first-time PCRA petitions is January 16, 1997).

Here, the Commonwealth argues that [Zaledzieski]'s PCRA Petition filed on June 12, 1995 is untimely because it was filed before the disposition of his direct appeal. The Commonwealth's argument lacks merit. **Because the PCRA petition was filed under the 1988 PCRA, [Zaledzieski] was not required to wait until the end of direct appeal to file his petition**. The case cited by the Commonwealth, Com. v. Kubis, is distinguishable for this very reason: Com v. Kubis was decided under the 1995 PCRA, which Act was not in effect until after [Zaledzieski] filed his petition. **[Zaledzieski] filed his petition in accord with the statute at the time and we would no more consider it untimely as any other petition which had complied with the pertinent statute when filed**. To do otherwise would be to treat similarly situated parties differently and would reach beyond this court's authority.

Opinion on Timeliness of Defendant's PCRA Petition, 10/16/2012, at unnumbered 4-5 (emphasis added).[10]

We agree with the PCRA court's analysis. Because the petition was filed under the 1988 PCRA, Zaledzieski was not required to wait until the end of direct appeal period to file the *pro se* petition. Additionally, his amended petition is considered timely filed because, despite the procedural inaction of this case, the original petition was timely. **Commonwealth v. Padden**, 783 A.2d 299 (Pa. Super. 2001); **Commonwealth v. Flanagan**, 854 A.2d

---

[10] The court further expounded on its rationale in its May 9, 2013, opinion, stating: (1) the Commonwealth's reliance on **O'Neil**, **supra**, is misplaced because the opinion cites no authority and provides no discussion on the issue of whether a premature PCRA petition creates a jurisdictional problem; and (2) the "premature filing" language in **Fralic**, **supra**, which the Commonwealth relied on, was *dicta* and therefore, not controlling. **See** Opinion, 5/9/2013, at 2-4.

489, 499-500 (Pa. 2004).[11] Therefore, we conclude that Zaledzieski's PCRA petition is properly before us, and we may now turn to the substantive claims.

Zaledzieski raises the following ten issues on appeal:

1.    Is [Zaledzieski] entitled to review of some claims that were waived because of the ineffectiveness of initial post-conviction counsel?

2.    Did trial counsel ineffectively litigate exclusion of "skinhead" and other criminal references?

3.    Did trial counsel ineffectively fail to object to pervasive vouching?

4.    Did trial counsel ineffectively fail to request a "polluted source"[?]

5.    Did counsel ineffectively investigate his theory and did this ineffective investigation lead to the admission of hearsay testimony contradicting the theory?

6.    Did counsel ineffectively fail to call alibi witnesses?

7.    Did counsel ineffectively fail to request or correct a proper "no adverse inference" instruction[?]

_____

[11]   Whether the dormancy of the case was due to attorney error or a judicial breakdown, the Commonwealth does not take issue with the PCRA court's denial of its motion to dismiss under Section 9543(b). **See** Opinion, 1/9/2014, at 6-13 (finding the Commonwealth failed to demonstrate it suffered prejudice from the delay in filing the amended petition). **See Commonwealth v. Renchenski**, 52 A.3d 251, 260 (Pa. 2012) (holding Section 9543(b) applies to delays in filing of original or amended PCRA petitions and that, "in certain instances of substantial delay," prejudice suffered by Commonwealth, "as demonstrated at evidentiary hearing, justifies dismissal of an original or amended petition."); **see also Commonwealth v. Swartzfager**, 59 A.3d 616 (Pa. Super. 2012); **Commonwealth v. Markowitz**, 32 A.3d 706 (Pa. Super. 2011).

8.     Did counsel ineffectively concede the mental state for first-degree murder?

9.     Did the court err in permitting a witness to describe a weapon irrelevant to the trial: a "cue ball in a sock" and did counsel ineffectively fail to object?

10.    Was counsel ineffective for failing to notify the court of potential extrinsic influence upon a juror and dishonesty in a juror's voir dire responses?

Zaledzieski's Brief at 1-3.

As Zaledzieski acknowledges in his concise statement, several of these issues, specifically four, five, seven, eight, and nine, were not raised by counsel in his PCRA proceeding. Indeed, a review of the record reveals that these issues were not raised in his *pro se* PCRA petition or in his amended PCRA petition. Because he raised these issues for the first time on appeal, they are waived. ***See Commonwealth v. Rainey***, 928 A.2d 215, 226 (Pa. 2007) (concluding that issues not raised in a PCRA petition are waived and cannot be considered for the first time on appeal); ***see also*** 42 Pa.C.S.A. § 9544(b) ("an issue is waived if the petitioner could have raised it but failed to do so before trial, at trial, during unitary review, on appeal or in a prior state postconviction proceeding."); Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal."). The PCRA court noted Zaledzieski's claims "were not litigated during the PCRA proceedings" and therefore, it "could not and did not rule on these claims[.]" PCRA Court Opinion, 3/19/2014, at 2. Because

Zaledzieski did not raise these issues before the PCRA court, we agree he has waived them on appeal, and shall not further consider them.

Likewise, with respect to Zaledzieski's first issue, in which he asserts he is entitled to review of these claims because first PCRA counsel, Farrell, was ineffective for failing to properly preserve those contentions, we conclude this issue is also waived because Zaledzieski did not request to include these claims in a second-amended or supplemental PCRA petition. **Commonwealth v. Henkel**, 90 A.3d 16 (Pa. Super. 2014) (*en banc*) (finding ineffective assistance of PCRA counsel claims cannot be raised for the first time on appeal); **see also Commonwealth v. Rigg**, 84 A.3d 1080, 1085 (Pa. Super. 2014) (concluding appellant cannot raise ineffective assistance of PCRA counsel for first time in Rule 1925(b) statement).

Each of Zaledzieski's remaining arguments (issues two, three, six, and 10) challenge the effectiveness of trial counsel. Our well-settled standard of review is as follows: When reviewing an order dismissing a PCRA petition, we must determine whether the ruling of the PCRA court is supported by record evidence and is free of legal error. **Commonwealth v. Burkett**, 5 A.3d 1260, 1267 (Pa. Super. 2010). "Great deference is granted to the findings of the PCRA court, and these findings will not be disturbed unless they have no support in the certified record." **Commonwealth v. Carter**, 21 A.3d 680, 682 (Pa. Super. 2011) (citation omitted). "'To plead and prove ineffective assistance of counsel a petitioner must establish: (1) that the

underlying issue has arguable merit; (2) counsel's actions lacked an objective reasonable basis; and (3) actual prejudice resulted from counsel's act or failure to act.'  Where the petitioner fails to meet any aspect of this test, his claim fails." **Henkel**, 90 A.3d at 30 (citations omitted).

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable Margherita Patti-Worthington, we conclude Zaledzieski's issues merit no relief.  The PCRA court's January 9, 2014, opinion comprehensively discusses and properly disposes of the questions presented on appeal.  **See** PCRA Court Opinion, 1/9/2014, at 21-29, 31-37, 38-44, and 50-51 (stating:  (1) with respect to the claim that counsel failed to exclude evidence of Zaledzieski's association with a "skinhead" organization, the court found counsel's actions demonstrated a reasonable trial strategy where (a) "revealing the involvement with the skinhead organization was part of defense counsel's strategy to discredit the Commonwealth's witness and shift the blame to Lynch,"[12] (b) "the involvement with an organized gang might have helped support an inference of a conspiracy against [Zaledzieski] or raised additional grounds on which to infer the witnesses' motives to lie,"[13] and (c) "[i]t was within the range of reasonable judgment for counsel to think this

---

[12]  **Id.** at 36.

[13]  **Id.**

would be of a greater detriment to the Commonwealth's witnesses, than it would be for his client;"[14] (2) with respect to the claim that counsel failed to object to "pervasive vouching" of certain Commonwealth witnesses, the court noted (a) counsel did object to the admission of Lynch's videotaped statement on grounds of hearsay and relevance, the Lynch video was only introduced to rehabilitate Lynch after his initial cross-examination and the interviewing officer's single statement at the end of the interview, "I believe you," did not establish the jury's role was subverted or that this caused them to be become prejudiced against Zaledzieski, (b) counsel demonstrated reasonable trial strategy with regard to Zaledzieski's own videotaped statement because it contained no inculpatory averments, the interviewing officer never stated a belief about Zaledzieski's guilt, and counsel was able to undermine the credibility of the interview officer where counsel successfully elicited on cross-examination of the officer that "he had terminated the interview, that [he] made little or no attempt to scrutinize [Zaledzieski]'s statements per usual police practices, and that [the officer] did not search for the murder weapon, in part, because he credited Lynch's statement that [Zaledzieski] had disposed of it,"[15] and (c) counsel demonstrated reasonable trial strategy with respect to the interviewing

---

[14] *Id.*

[15] *Id.* at 41.

officer's in-court statement where counsel's efforts were to "show an improper or hastily-conducted murder investigation which involved police bias,"[16] and moreover, the jury was provided with a cautionary instruction that "credibility of witnesses was an issue for their determination alone;"[17] (3) with respect to the claim that counsel was ineffective for failing to call Zaledzieski's mother and grandmother as alibi witnesses, the court found Zaledzieski did not rebut the presumption that his counsel made a reasonable decision regarding trial strategy where counsel recalled that he did not present the witnesses because Zaledzieski, himself, protested that the alibi was for the wrong night and "consistent with defense counsel's theory of the case, counsel might have avoided this alibi testimony because it would establish that [Zaledzieski] was in the area of the crime on the night of the murder;"[18] and (4) with respect to the claim that counsel was ineffective for failing to notify the court of potential extrinsic influence upon a juror and dishonesty in a juror's voir dire responses, the court stated there was no arguable merit or prejudice as to this issue where Zaledzieski failed to present any evidence other than a "rumor," from an unidentified source, that the jury may be corrupted and therefore, there was "no evidence on

---

[16] *Id.* at 44.

[17] *Id.*

[18] *Id.* at 27.

which to infer actual juror tampering or 'improper extrinsic influence' on the jury such that a mistrial would have been warranted."[19]). Accordingly, we conclude the PCRA court properly found counsel was not ineffective and therefore, affirm on the basis of the PCRA court's opinion with respect to these issues.[20]

Order affirmed.

Judgment Entered.

_(signature)_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/22/2015

---

[19] **Id.** at 51.

[20] We note the PCRA court addresses several more claims raised by Zaledzieski in his PCRA petition, which he has since abandoned on appeal. Therefore, we need not address them further.

COURT OF COMMON PLEAS OF MONROE COUNTY
FORTY-THIRD JUDICIAL DISTRICT
COMMONWEALTH OF PENNSYLVANIA


COMMONWEALTH OF PENNSYLVANIA     :       NO. 678 CRIMINAL 1992
                                         :
              v.                       :
                                         :
MATTHEW A. ZALEDZIESKI,          :
         Defendant               :       PCRA, § 9543(b) MOTION

## OPINION

This matter comes before us through the Post-Conviction Relief Act Petition filed by Matthew A. Zaledzieski ("Defendant").[1] The Defendant's PCRA petition follows his conviction for first-degree murder in the stabbing death of Neil Rappley. The Defendant first filed this PCRA Petition approximately eighteen (18) years ago, but the Petition was neglected for unknown reasons and has never been decided.[2] The Defendant claims that he is actually innocent, raising three newly discovered evidence claims based upon the alleged confession of a co-defendant, coupled with fifteen claims of ineffective assistance of counsel. The Commonwealth responds to the merits, as well as raising numerous procedural and evidentiary objections and a motion to dismiss for delay in filing under § 9543(b) of the PCRA. The procedural history is as follows:

---

[1] It appears that various incorrect spellings of the Defendant's last name appear in the filings of record. In his Motion to Re-Open in 2012, the defense counsel spelled the Defendant's name as 'Zaledjieski.' In the trial transcript from 1993, it was spelled 'Zeledjieski.' The depositions from the Defendant's mother and grandmother in 2000 provide yet another spelling, 'Zaledzieski.' This last spelling is the only time a witness has actually spelled the Defendant's name on the record and we must suppose that 'Zaledzieski' is correct.

[2] The reason for the delay in deciding the Defendant's petition does not appear of record. The trial judge who was previously handling this case is now intermittently serving as a senior judge. After this matter was brought to our attention by PCRA counsel in July 2012 we held a hearing and issued two opinions, dated October 16, 2012 and May 9, 2013, in which we addressed certain issues regarding the timeliness of the Defendant's PCRA Petition. As discussed in those opinions, the Petition is so old that it was initially filed under a prior version of the PCRA.

R. 019a

On July 31, 1992, the Defendant was arrested and charged with the stabbing death of the victim, Neil Rappley.

On May 26, 1993, a jury convicted the Defendant of First-Degree Murder, Aggravated Assault, and Recklessly Endangering Another Person. The Defendant was found not guilty of Conspiracy. The Defendant was represented by Andrew Hood, Esq. and prosecuted by James Gregor, Esq. The Defendant's trial was presided over by the Honorable Linda W. Miller.

On May 2, 1994, the Defendant was sentenced to life in prison without the possibility of parole. On May 31, 1994, the Defendant appealed this order through his counsel, Attorney Hood.

On January 13, 1995, the Superior Court affirmed the judgment of sentence dated May 2, 1994.[3]

The Defendant filed a petition for allowance of appeal to the Pennsylvania Supreme Court. On June 12, 1995, while the petition for allowance of appeal was still pending, the Defendant filed a *pro se* PCRA Petition. That same day, Judge Miller appointed E. David Christine, Esq. to represent the Defendant in his Petition.

On July 25, 1995, the Supreme Court denied the Defendant's petition for allowance of appeal from the decision of the Superior Court dated January 13, 1995.[4]

On September 18, 1995, the Defendant filed a petition in this Court for appointment of a private investigator in aid of his PCRA Petition. The Defendant's motion was granted the same day.

---

[3] On appeal to the Superior Court, the Defendant raised and argued whether this Court erred in denying his post-trial motion for dismissal or a new trial, due to the Commonwealth's failure to provide pre-trial discovery pursuant to Pa.R.Crim.P. 305.

[4] Com. v. Zeledjieski, 541 Pa. 639, 663 A.2d 691 (Pa. 1995) (order denying allowance of appeal). While publicly recorded, the Supreme Court's denial of allocatur does not appear in this case's record.

2

R. 020a

On January 22, 1998, E. David Christine, Esq. filed a motion to withdraw as the Defendant's counsel, which was granted on January 30, 1998, and Stephen M. Higgins, Esq. entered his appearance.

On February 18, 2000, Attorney Higgins entered a praecipe to withdraw as the Defendant's counsel and J. Michael Farrell, Esq. entered his appearance the same day.

On July 14, 2003, Attorney Farrell filed an Amended PCRA Petition.[5] On July 31, 2003, Judge Miller ordered the Commonwealth to file its answer to the Amended PCRA Petition by September 3, 2003. On October 7, 2003, the Commonwealth filed its response to the Amended PCRA Petition.[6]

On July 6, 2006, Attorney Farrell filed a reply to the Commonwealth's response to the Amended PCRA Petition. On June 8, 2007, Attorney Farrell submitted a letter to Judge Miller asking the court to proceed with the case. No action was taken by the Court. At some point between this time and July 2012, the Defendant's case was marked by the Clerk of Courts as closed on the docket. The reason the case was closed is not reflected in the record.

On July 17, 2012, five years later, Attorney Farrell filed a Motion to Reopen the case and we scheduled a hearing on the Motion for August 24, 2012. On July 26, 2012, the Commonwealth filed a Motion for Continuance due to a conflict of interest,[7] which we granted, and rescheduled the hearing for September 24, 2012. After the hearing on September 24, 2012, we ordered the parties to submit briefs on the issue of timeliness by October 15, 2012. On

---

[5] The full title of this filing is "Amended Petition for Habeas Corpus Relief Pursuant to Article I, Section 14 of the Pennsylvania Constitution and Statutory Post Conviction Relief Under 14 Pa.C.S. Section 9542 *et seq.* and Consolidated Memorandum of Law."

[6] Between October 7, 2003 and July 6, 2006, no other filings, hearings, or actions were taken by counsel or the trial court.

[7] The basis of the conflict of interest was that the current district attorney, E. David, Christine, Esq., represented the Defendant as PCRA counsel until his withdrawal in January 1998. Once leave to withdraw was granted, the State Attorney General's Office entered their appearance on behalf of the Commonwealth.

3

**R. 021a**

October 12, 2012, the Commonwealth filed a Brief in Opposition, arguing that the Petition was untimely. On October 16, 2012, the Defendant filed a Brief in Support.

On October 16, 2012, we granted the Defendant's Motion to Reopen, holding that the Defendant's petition was timely under the prior version of the Post-Conviction Relief Act in effect at the time of filing. Subsequently, the Defendant filed two separate motions for continuance and the PCRA hearing was ultimately scheduled for May 28, 2013.

On March 7, 2013, the Commonwealth filed a Motion for Reconsideration of the timeliness of the Petition. On March 11, 2013, the Commonwealth filed a Motion to Dismiss pursuant to 42 Pa.C.S.A. § 9543(b).

On March 18, 2013, we held a hearing on the Commonwealth's Motion for Reconsideration.[8] On March 19, 2013, the Commonwealth's Motion to Dismiss was scheduled for the hearing on May 28, 2013.

On May 9, 2013, we entered an opinion and order denying the Commonwealth's Motion for Reconsideration.

On May 28, 2013, we held a hearing on the PCRA petition and the Motion to Dismiss. On June 28, 2013, we held a second hearing for further testimony on the same issues and we ordered the parties to submit briefs by July 31, 2013.

On July 31, 2013, the Commonwealth submitted its brief. On August 15, 2013, the Defendant submitted his brief after being granted an extension.

In the amended PCRA Petition, the Defendant advances approximately eighteen (18) claims. Three of these claims relate to newly discovered evidence, while fifteen claims allege ineffective assistance of counsel. Many of these claims are interrelated or repetitive in

---

[8] The March 18 hearing was originally scheduled to also cover the Defendant's PCRA Petition and the Commonwealth's Motion to Dismiss. However, these issues were delayed as the Defendant failed to timely file a writ of habeas corpus in order to appear at the hearing.

4

R. 022a

certain respects. The Defendant's ineffectiveness challenges include failure to object to "skinhead" references, failure to adequately cross-examine a witness, failure to investigate witnesses and call alibi witnesses, failure to raise juror tampering, and prosecutorial misconduct.

In the Commonwealth's brief, it responds to the merits of Defendant's claims, raises a number of procedural and evidentiary objections, and also argues that the Defendant's petition should be dismissed because delay in litigating this case has caused the Commonwealth prejudice under § 9543(b).

The basic facts presented at trial are these: On July 15, 1992, in the early morning hours, the Defendant, Todd Mastrobuoni, and John Lynch were driving through East Stroudsburg. Lynch drove the car, while the Defendant was seated in the rear of the car, and Mastrobuoni was asleep in the front passenger seat after excessive drinking. Lynch stopped the car in response to the hails of Neil Rappley, who asked for a ride. Lynch refused. An argument ensued with Mr. Rappley, at the end of which the Defendant stabbed Mr. Rappley with a punch dagger. As the victim attempted to flee, the Defendant chased Mr. Rappley and stabbed him seven more times. Mastrobuoni was asleep throughout the entire incident. Fleeing the scene, Lynch drove the Defendant home. On the way they picked up Tina Worth, who saw the Defendant place what looked like a knife into his pocket. The Defendant also stated how he had just stabbed a homeless man. The Defendant discussed the incident with Lynch and Mastrobuoni, telling them to keep quiet about it.

The Defendant, Lynch, and Mastrobuoni were all members of the 'skinheads organization.' The Commonwealth never identified the murder weapon and no physical evidence linked the Defendant to the victim or the scene.

R. 023a

The Defendant's version of the story is that he is actually innocent, that he was not present at the stabbing, and that it was most likely Lynch who committed the stabbing and implicated the Defendant to prevent his own prosecution.

We now turn to the various claims and objections raised by the parties. We will discuss other testimony and evidence in its appropriate sections.

## A. <u>Timeliness</u>[9]

For the purposes of preserving this issue for appeal, the Commonwealth has reiterated its objection to the PCRA Petition based on timeliness. We have considered timeliness in two opinions, dated October 16, 2012 and May 9, 2013, and declined to dismiss the petition.

## B. <u>Prejudice to Commonwealth from Delay in Filing</u>

The Commonwealth argues that the Petitioner's delay in filing and delay in litigating his claims have caused the Commonwealth prejudice and should be dismissed.

42 Pa.C.S.A. § 9543 of the Post-Conviction Relief Act states that:

> **(b) Exception.**--Even if the petitioner has met the requirements of subsection (a), the petition shall be dismissed if it appears at any time that, because of delay in filing the petition, the Commonwealth has been prejudiced either in its ability to respond to the petition or in its ability to re-try the petitioner. A petition may be dismissed due to delay in the filing by the petitioner only after a hearing upon a motion to dismiss. This subsection does not apply if the petitioner shows that the petition is based on grounds of which the petitioner could not have discovered by the exercise of reasonable diligence before the delay became prejudicial to the Commonwealth.

42 Pa.C.S.A. § 9543(b) ("Delay in Filing Exception").

Subsection (a) deals with the merits of the PCRA petition and puts the burden on the petitioner to plead and prove certain claims entitling him to relief, such as ineffective assistance of counsel.

42 Pa.C.S.A. § 9543(a). "Thus, even where a defendant can establish that he was prejudiced by

---

[9] The Commonwealth has submitted a well-organized brief addressing this PCRA Petition in detail. Our opinion mirrors the Commonwealth's major headings for ease of review.

6

R. 024a

counsel's actions or inaction or a court's actions, § 9543(b) prevents the PCRA court from affording relief." Com. v. Markowitz, 32 A.3d 706, 711 (Pa. Super. Ct. 2011) appeal denied, 40 A.3d 1235 (Pa. 2012).

The Delay in Filing Exception has been construed in conjunction with the other requirements of the PCRA statute:

> [the] one-year time limitation, coupled with its few exceptions, reflects a legislative balance between the competing concerns of the finality of adjudications and the reliability of convictions. Section 9543(b) further demonstrates this balance by permitting a PCRA court to dismiss a matter on grounds of delay, which promotes the interest in finality, while requiring an evidentiary hearing where the Commonwealth must prove prejudice, thereby protecting the reliability of the underlying conviction.

Com. v. Renchenski, 52 A.3d 251, 259 (Pa. 2012).[10]

Although a plain reading of the statute might imply that the 'delay in filing' only refers to the initial filing, this interpretation would not account for the nuances of the statutory language. Renchenski, 52 A.3d at 258. Considering the statutory background, the Delay in Filing Exception also applies to the filing of an amended PCRA petition. Id. at 260;[11] Com. v. Swartzfager, 59 A.3d 616, 619-20 (Pa. Super. Ct. 2012). This interpretation "provides a mechanism to ensure that counsel and petitioners maintain some level of diligence in pursuing collateral relief both before and after the filing of an original petition." Markowitz, 32 A.3d at 713.

In Weatherhill, the Superior Court considered whether there was prejudice from a delay in filing. In that case, the defendant first filed his PCRA petition seven years after conviction. Com. v. Weatherill, 24 A.3d 435, 436 (Pa. Super. Ct. 2011). He then filed an

---

[10] While Renchenski states that 9543(b) 'permits' the PCRA court to dismiss, the actual wording of the subsection is mandatory, i.e. "shall." 42 Pa.C.S.A. § 9543(b).

[11] Justice Todd concurred in order to note that it remained an open question whether dismissing an amended PCRA Petition pursuant to 42 Pa.C.S.A. § 9543(b) should also result in the dismissal of the original PCRA Petition. Renchenski, 52 A.3d at 261 (TODD, J. concurring).

R. 025a

amended PCRA petition six years later. Id. By the time this issue reached the Superior Court, twenty years had elapsed since the defendant's conviction. Id. at 440. The detective who had heard the Defendant's confession had died approximately 1-3 years before. Id. at 437-38. One of the first responders to the crime scene had also died. Id. In addition, the Commonwealth lost two of its files for the case. Id. The Court inferred that "this lengthy period will necessarily have affected the memories of any remaining Commonwealth witnesses." Id. at 440. The defendant advanced new theories and defenses, which the prosecution would be hampered in responding to due to its lack of live witnesses. Id. Considering these circumstances, the Court found that there was prejudice and dismissed the defendant's petition because of a delay in filing. Weatherill, 24 A.3d at 440 appeal denied, 63 A.3d 777 (Pa. 2013).

In Renchenski, the Supreme Court affirmed a dismissal under the Delay in Filing Exception. In that case, the defendant filed an amended PCRA petition nineteen years after trial. Renchenski, 52 A.3d at 252.[12] Although his initial PCRA petition was timely filed, it had gone without adjudication due to the inaction of the court, PCRA counsel, and the defendant himself. At least fifteen witnesses were unavailable. Id. at 253, 260 fn. 6. No testimony was presented on the prejudicial delay issue. Id. However, the defendant stipulated to the unavailability of trial witnesses and did not request any further evidentiary hearing. Id. Once the trial court dismissed his petition as prejudicial due to a delay in filing, the defendant raised the adequacy of the delay evidence on appeal. See id. The Supreme Court affirmed dismissal. Id. The Court first construed § 9543(b) and found that it applied to a delay in filing an amended petition. Id. at 260. The Court then cited the stipulations to evidence and lack of request for further hearings, reasoning that the defendant had waived objections to the adequacy of the evidence under § 9543(b). Id. at 260 fn. 6.

---

[12] Com. v. Renchenski, 988 A.2d 699, 701 (Pa. Super. Ct. 2010) (Superior Court case).

8

R. 026a

We must first deal with a matter of statutory interpretation concerning the appropriate inquiry under § 9543(b).

First, citing <u>Renchenski</u>, the Commonwealth argues "the Supreme Court of Pennsylvania has specifically determined § 9543(b) applies not simply to a delay in filing a petition but to a delay in litigating a pending PCRA petition." [Com.'s Brief, 8/5/13, at un-numbered page 5.] In holding that a 'delay in filing' applies to the filing of an amended petition, the Supreme Court opined that "Section 9543(b) provides a mechanism to ensure that counsel and petitioners maintain some level of diligence in pursuing collateral relief both before and after the filing of an original petition." <u>Renchenski</u>, 52 A.3d at 254. The Commonwealth relies upon this language in arguing that a delay in litigating a petition may result in dismissal under § 9543(b). [Com.'s Brief, 8/5/13, at un-numbered pages 6-7.] However, <u>Renchenski</u>'s holding did not address a 'delay in litigating' and such an interpretation goes against the statutory language of §9543(b).

In <u>Renchenski</u>, while the petition for allowance of appeal raised the 'delay in litigation' argument presented by the Commonwealth,[13] the Supreme Court never addressed this issue. Instead, the Court affirmed dismissal based on its holding that the statute includes a delay in filing the amended petition. This is the "mechanism" which provides a way of dismissing even a meritorious claim under the PCRA. Moreover, as a matter of plain meaning, "filing" is clearly distinct from "litigating." The recent interpretative efforts performed by the appellate courts could have been avoided if 'litigating' and 'filing' were equivalent. While it would have been a reasonable policy, the legislature did not choose to mandate dismissal of a PCRA based on 'delay in litigating' the petition, at least insofar as § 9543(b) is concerned. Thus, contrary to the Commonwealth's suggestion, <u>Renchenski</u> does not stand for the proposition that a petition

---

[13] <u>Renchenski</u>, 52 A.3d at 255.

9

R. 027a

may be dismissed under § 9543(b) because of a delay in litigating. Such a distinction is significant.

We also note that this same statutory language limits what prejudice we consider. Section 9543(b) states that "the petition shall be dismissed if it appears at any time that, *because of delay in filing the petition*, the Commonwealth has been prejudiced." 42 Pa.C.S.A. § 9543(b) (emphasis added). Thus, the plain meaning of the word "because" requires a causal connection between the prejudice and the delay in filing; other sources of prejudice are irrelevant under 9543(b). This effectively limits the prejudice we may consider to prejudice which accrued during a specific timeframe. We make special note of this language because the appellate courts do not appear to have commented on it,[14] and neither have the parties discussed it in their briefs.[15] Prejudice caused by an attorney's delay in advocating, or the court's delay in deciding a case, does not form a basis for relief under § 9543(b). Other safeguards already exist through which the Commonwealth could protect itself from prejudicial delay in litigating a case.[16] Although a PCRA Petition is the Defendant's responsibility, a motion to dismiss under § 9543(b) is not. The Commonwealth is the interested party and has the burden to carry that motion forward at a time when it can factually develop its claim. In any case, we will address the Commonwealth's claims insofar as they address prejudice caused by the delay in filing.

---

[14] Despite this language in the statute, the appellate courts have made no reference to the cause of delay when considering the prejudice to the Commonwealth. For instance, the court in Weatherhill considered witness' deaths which occurred years after the delay in filing of the amended petition, and otherwise made no reference to the causes or timeframes in which the sources of prejudice occurred.

[15] The Defendant's brief fails to address the Commonwealth's Motion to Dismiss entirely, not even noting that this Motion has been filed.

[16] Of course, the PCRA Court is required to promptly dispose of its cases and this is the primary preventive safeguard against this very situation. The Commonwealth could petition the Court for disposition, particularly where it appears that a delay in disposition indicates something has gone wrong. This was clearly the case as early as 1998 when Attorney Christine petitioned to withdraw, even though the PCRA Petition had not been decided for approximately three years.

10

R. 028a

## Application: Prejudice from Delay

The Commonwealth bases its claim of prejudice on three types of occurrences: fading memories, lost ability to investigate witness' stories, and the loss of files related to the case. [Com.'s Brief, 8/5/13, at un-numbered pages 7-9.] It goes on to point to specific circumstances. The only evidence presented by the Commonwealth was the testimony of Attorney Hood.

The Commonwealth's claim of fading memories relies on the testimony of trial counsel, Andrew Hood. At the PCRA Hearing, trial counsel stated that his memory to recall some specifics was limited. [N.T., 5/28/13, at 8.] He could remember some conversations, but not others. [Id.] This is not surprising since, at that time of the PCRA hearing, the trial was 20 years old. As the PCRA hearing proceeded, trial counsel did remember a number of details from the trial, his investigations, and his interactions with the Defendant. Counsel testified that his memory would have been better were this petition to have been litigated three or four years after its filing. [Id.]

While fading witness memory may significantly prejudice the Commonwealth, the Commonwealth has failed to show a witness' faded memories have caused it prejudice here. The Commonwealth only points to the testimony of Attorney Hood to show prejudice from this source. As we stated, Attorney Hood was able to recall a number of significant details for the petition and other details were supplemented by the trial record. In addition, the only evidence of a faded memory is presented 10 years after the date which forms the basis of the delay in filing. We do not know whether Attorney Hood's memory would have been better on that date and, thus, we do not know whether the Commonwealth was prejudiced by the delay in filing.

11

**R. 029a**

The Commonwealth also claims that the ability to investigate a crucial witness, Shawn Skibber, has been hampered. Thus, the Commonwealth is no longer in a position to put on an adequate challenge to the Defendant's newly discovered evidence claims. We construe this aspect of the Commonwealth's claim as also challenging prejudice from its ability to prosecute at a future trial, assuming such trial was granted. Skibber testified at the PCRA hearing that the only eyewitness to the victim's stabbing, John Lynch, confessed to stabbing the victim himself. If this petition had been litigated within a reasonable time, the Commonwealth claims it could have employed a variety of investigative tools to confirm or deny Skibber's story, including obtaining receipts from the bar where this alleged confession occurred, interviewing the bar's employees and patrons, or interviewing the friend Skibber claims he went to the bar with.

The Commonwealth raises a similar argument for the Defendant's other witnesses. Nancy Zaledjieski, an alleged alibi witness, passed away even before the PCRA hearing. The Commonwealth also points out that Defendant's niece, Doris, "was conspicuously missing from the evidentiary hearing." [Com.'s Brief, 8/5/13, at un-numbered page 8.] The Commonwealth might have examined these witnesses, or others present in the East Stroudsburg area the night of the murder, in order to refute the Defendant's claims.

Neither Nancy nor Doris testified at trial and we simply do not know whether their testimony would support or deny the Commonwealth's claims. The Commonwealth has also made no representation regarding its attempted investigation in this regard. The Commonwealth's claim of prejudice lacks proof.

The Commonwealth spoke with the interviewing officer, Sergeant John Stack, who represented that he has little to no memory of the case. Sergeant Stack has since moved to

12

R. 030a

Florida and his testimony was not presented at the § 9543(b) hearing. Counsel also represents she inquired into the location of the police files and that she was told they could not be located. No testimony was presented in this regard. The claims regarding Sergeant Stack and the lost case files lack timing references. We do not know whether the Commonwealth was prejudiced by a delay in filing in 2003; there is simply no information on when the alleged prejudice occurred.

Accordingly, we deny the Commonwealth's motion to dismiss under § 9543(b) because it has failed to show prejudice.

## C. Newly Discovered Evidence

The Defendant claims that he is actually innocent and entitled to a new trial based on newly discovered evidence.

To obtain relief based on this claim, the petitioner must demonstrate that the newly discovered evidence:

> (1) could not have been obtained prior to the conclusion of the trial by the exercise of reasonable diligence;
> (2) is not merely corroborative or cumulative;
> (3) will not be used solely to impeach the credibility of a witness; and
> (4) would likely result in a different verdict if a new trial were granted.

Com. v. Pagan, 950 A.2d 270, 292 (Pa. 2008).

The petitioner must prove each of the factors by a preponderance of the evidence. Com. v. Foreman, 55 A.3d 532, 537 (Pa. Super. Ct. 2012).

The current Rules of Criminal Procedure also place timing restrictions on a claim of newly discovered evidenced:

> **After-Discovered Evidence.** A post-sentence motion for a new trial on the ground of after-discovered evidence must be filed in writing promptly after such discovery.

13

**R. 031a**

Pa.R.Crim.P. 720(C).

The Comment to the Rule explains that this general timing requirement extends to a PCRA Petition, and another section of Rule 720 creates an exception to the normal ten day timing requirements for post-sentence motions. Pa.R.Crim.P. 720(a).

We will discuss each piece of evidence in turn.

### i. Anthony Ventre

The Defendant claims that Anthony Ventre would provide testimony that he heard Lynch bragging about stabbing a man on July 15, 1992. The Defendant did not produce Ventre at any hearing or otherwise show that the Defendant could produce him to present such testimony.

Accordingly, we agree with the Commonwealth that the Defendant has failed to prove this aspect of his claim.

### ii. Shawn Skibber

On May 28, 2013, Shawn Skibber testified that on a Summer night in 1992, he went to T.J.'s bar in Mount Pocono. [N.T., 5/28/13, at 145.] There he encountered John Lynch. [Id.] Skibber described their brief conversation in the following words:

> Skibber: Okay. As I said, John yelled my name, Hey, Skibber, what's up? I said, What do you want, John? Yo, man, guess what I just did? I said, What? Man, I just stabbed some dude down in East Stroudsburg. I said, Oh, yeah, sure you did, John. I'm sure you really stabbed somebody. He's like, No, man, for real. I said, Listen, man, get away. I don't like you. I never did like you. Get away from me. I got in the car and left.

[Id. at 150.]

Later, Skibber left the bar, went home, and mentioned what Lynch had said to his mother. [N.T., 5/28/13, at 151.] Bonnie Skibber confirmed that in 1992 her son, Shawn Skibber, had told her about Lynch's statements at the bar. [Id. at 171.]

14

**R. 032a**

In 1993, Shawn Skibber met the Defendant while they were in prison together. [N.T., 5/28/13, at 151.] Skibber informed the Defendant of what Lynch had said. [Id.] At this point, the Defendant had already gone to trial and been convicted. [Id.] Skibber explained that he did not come forward before the trial because he did not think it was his business, but afterwards he came forward because it was wrong that an innocent man was convicted. [Id.at 152.]

The Commonwealth objects to the admission of Lynch's alleged statement because it is hearsay not falling within any exception. At the evidentiary hearings, the Defendant orally raised a hearsay exception under Rule 804(b)(3). He also claimed that Lynch's statement would be admissible through other means, such as Rule 613 which deals with prior inconsistent statements. However, the Defendant failed to address these issues in his brief. Before we may consider Skibber's testimony regarding Lynch's statement, we must decide whether this testimony is admissible.

The Rules of Evidence apply with equal force to the proceedings under the PCRA. See Pa.R.E. 101(a) (Scope of Rules); Com. v. Spotz, 47 A.3d 63, 115 (Pa. 2012) (declining to entertain PCRA issue because the pertinent evidence was ruled inadmissible at the PCRA hearing).

Hearsay is defined as a declarant's out-of-court statement offered to prove the truth of the matter asserted. Pa.R.E. 801(c). Hearsay is generally inadmissible. Pa.R.E. 802.

The Statement Against Interest Exception provides that a statement is admissible when the declarant is unavailable and the declarant makes a statement that:

> (A) a reasonable person in the declarant's position would have made only if the person believed it to be true because, when made, it was so contrary to the declarant's proprietary or pecuniary interest or had so great a tendency to

15

R. 033a

invalidate the declarant's claim against someone else or to expose the declarant to civil or criminal liability; and

(B) is supported by corroborating circumstances that clearly indicate its trustworthiness, if it is offered in a criminal case as one that tends to expose the declarant to criminal liability.

Pa.R.E. 804(b)(3).

For purposes of 804(b)(3), a declarant is considered to be unavailable if the declarant:

> (5) is absent from the trial or hearing and the statement's proponent has not been able, by process or other reasonable means, to procure:
>
> ...
>
> > (B) the declarant's attendance or testimony, in the case of a hearsay exception under Rule 804(b)(2), (3), or (4).

Pa.R.E. 804(a)(5).

In determining unavailability, the appropriate inquiry is whether the proponent has "made a good faith effort to produce the live testimony of the witness and, through no fault of its own, is prevented from doing so." Com. v. Nelson, 652 A.2d 396, 398 (Pa. Super. Ct. 1995).

Here, the Defendant's legal theory is that he is actually innocent because someone else murdered Neil Rappley. Lynch's alleged statement that he stabbed someone around the time and place of the murder is obviously offered for the truth of the matter asserted. Thus, it is hearsay.[17]

Lynch's alleged statement that he "just stabbed some dude down in East Stroudsburg" would obviously expose Lynch to criminal liability and a reasonable person in that position would not have made such a statement if it were not true. There were also corroborating circumstances to this statement which clearly indicate its trustworthiness, such as Lynch's admitted presence at the time and place of the murder, his involvement in another assault in

---

[17] In this respect, we note that the Defendant's theory requires Lynch to have already lied under oath at trial and implies a strong motivation for doing so again. Lying would be much more effective than invoking the 5th Amendment, which would immediately arouse suspicion and require Lynch to have recently developed advanced moral concerns for truthfulness. Thus, the Rule's preference for live testimony seems somewhat weakened in this context.

16

R. 034a

Allentown shortly thereafter, and the fact that a knife was used in both the Allentown incident and the present case. We must next examine whether Lynch is unavailable under the Rule.[18]

At the evidentiary hearings, the Defendant presented an exhibit showing that Lynch was currently serving a sentence for Theft by Deception (Def.'s Exh. 8) and argued that Lynch was 'constructively unavailable' insofar as the Defendant is indigent and could not afford to secure a writ of habeas corpus for his appearance. [N.T., 6/28/13, at 5.] The Commonwealth counters that the Defendant obviously had the funds to secure one writ of habeas corpus for an incarcerated witness' appearance, i.e. Shawn Skibber, and the Defendant made no attempt to have Lynch testify by video conference. [Com.'s Brief, 8/5/13, at un-numbered page 12.]

Rule 804(b)(3) requires the statement's proponent to employ reasonable means to obtain the "attendance or testimony" of the out-of-court declarant. We have no evidence of that here. The Defendant merely asserts Lynch was 'constructively unavailable' because of the Defendant's indigency and without representation of any efforts to obtain this witness. The Rule does not permit such a minimal showing. See Consol. Rail Corp. v. Delaware River Port Auth., 880 A.2d 628, 631 (Pa. Super. Ct. 2005) (holding no exception; proponent did not take any steps to procure witness's appearance and relied solely on membership in a witness protection program as proof of unavailability); Com. v. Lebo, 795 A.2d 987, 990-91 (Pa. Super. Ct. 2002) (holding no exception; although witness was in boot camp in South Carolina, party showed no efforts to obtain witness). Indigency might be a sufficient showing if the Defendant had requested video

---

[18] We note that the Commonwealth subtly misinterprets Pa.R.E. 804 by asking us to exclude this statement because Skibber is not a credible witness. Rule 804(b)(3) asks us to consider whether the *statement* "is supported by corroborating circumstances that clearly indicate its trustworthiness." Whether the factfinder will then go on to believe the witness who puts the statement forward is not at issue. If interpreted otherwise the court, as evidentiary gatekeeper, would often rule on issues of witness credibility before that witness has even spoken. The factfinder is as capable as it ever was of deciding whether to believe the witness who puts the hearsay forward. The Rule merely asks us to determine if corroborating circumstances of the hearsay statement are sufficient to allow inherently suspect evidence to be introduced. We would consider the Commonwealth's arguments against Skibber's credibility should we find that this evidence is admissible.

17

R. 035a

testimony and this was unavailable. However, he did not request video testimony and we are constrained to grant the Commonwealth's motion to exclude Lynch's prior statement offered by Shawn Skibber for failure to show that Lynch was unavailable.

Neither does Rule 613(b) (Prior Inconsistent Statements) allow for admission. The Defendant has not met the requirements for that Rule in order to admit Lynch's statement substantively. See Com. v. Lively, 610 A.2d 7, 10 (Pa. 1992) (admit as substantive evidence if given under oath at a formal hearing; reduced to writing, signed, and adopted; or contemporaneous verbatim recording).

Accordingly, this newly discovered evidence claim fails for want of proof.

### iii.  Bonnie Skibber

The Commonwealth objects to Bonnie Skibber's testimony as double hearsay. [Com.'s Brief, 8/5/13, at un-numbered pages 15-16.]

Bonnie merely testified that in 1992 her son, Shawn Skibber, told her about Lynch's alleged confession to the stabbing. We have already determined that Lynch's statements were hearsay not falling within any exception. Thus, if used to prove that Lynch committed the murder, Bonnie's testimony is also inadmissible hearsay. Bonnie's testimony is admissible insofar as it is used to show Shawn Skibber did not fabricate Lynch's alleged statement. See Pa.R.E. 613(c)(1) (Prior Consistent Statements). However, a determination of Skibber's credibility has no import for this claim because Lynch's alleged statement is inadmissible hearsay.

Accordingly, this newly discovered evidence claim fails for want of proof.

18

**R. 036a**

### D. Ineffective Assistance of Counsel

To merit relief based on an ineffective assistance of counsel claim, a petitioner must show that such ineffectiveness "in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." Com. v. Cook, 952 A.2d 594, 613 (Pa. 2008); 42 Pa.C.S.A. § 9543(a)(2)(ii). In accordance with Constitutional jurisprudence, this standard has been interpreted to require a petitioner to prove that: (1) the underlying claim is of arguable merit; (2) counsel's performance lacked a reasonable basis; and (3) the ineffectiveness of counsel caused the petitioner prejudice. Com. v. Pierce, 786 A.2d 203, 213 (Pa. 2001); Com. v. Cook, 952 A.2d 594, 613 (Pa. 2008). Where the petitioner has failed to set forth all three prongs of the ineffectiveness test and meaningfully discuss them, he is not entitled to relief, and such claims are waived for lack of development. Com. v. Steele, 961 A.2d 786, 797 (Pa. 2008); see also Com. v. Wharton, 811 A.2d 978, 986 (Pa. 2002) (failure to show any prong requires rejection of the claim).

Arguable merit exists where counsel's act or omission conflicts with a claim that could have been raised under a statute, rule, established precedent, or other legal basis. See Com. v. Duffey, 855 A.2d 764, 772 (Pa. 2004) (arguable merit where counsel failed to object to use of the Defendant's post-arrest silence); Com. v. McNeil, 679 A.2d 1253, 1259 (Pa. 1996) (arguable merit where counsel failed to object to inadmissible evidence under the Sentencing Code).

A reasonable basis exists where counsel's conduct is designed to effectuate the client's interests. Com. v. Howard, 719 A.2d 233, 237 (Pa. 1998). Counsel's conduct lacks a reasonable basis if "an alternative not chosen offered a potential for success substantially greater than the course actually pursued." Com. v. Colavita, 993 A.2d 874, 887 (Pa. 2010). "[E]very

19

**R. 037a**

effort [must] be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland v. Washington, 466 U.S. 668, 689 (1984). To that end, there is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. Id. The defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy." Id.; see also Com. v. Smith, 17 A.3d 873, 888 (Pa. 2011) (where strategy and tactics are concerned, counsel deemed effective when choosing "a particular course that had some reasonable basis designed to effectuate his client's interests").

Prejudice exists where there is a reasonable probability that, but for counsel's error, the outcome of the proceeding would have been different. Pierce, 786 A.2d at 213. A reasonable probability is a probability that is sufficient to undermine confidence in the outcome of the proceeding. Cook, 952 A.2d at 614. Moreover, the court will not consider "abstract allegations of ineffectiveness; a specific factual predicate must be identified to demonstrate how a different course of action by trial counsel would have better served [the petitioner]'s interest." Id. (citation omitted).

The Defendant raises numerous ineffectiveness claims. We will discuss the facts supporting each claim under their appropriate subheading. For claims that satisfy both the arguable merit and the unreasonable conduct prongs, we will consolidate the claims for our consideration of the prejudice prong. Any prejudice must be viewed in the full context of the evidence to determine if it would have altered the course of trial. See Ross v. Dist. Attorney of the Cnty. of Allegheny, 672 F.3d 198, 210 (3d Cir. 2012) (consider totality of evidence at trial when assessing prejudice).

R. 038a

### i.   Pre-Trial Investigations

In the Defendant's first claim of ineffectiveness, he alleges that counsel "failed to conduct effective investigation on behalf of petitioner so as to discover the existence of witnesses Anthony Ventre, Shawn Skibber, and Bonnie Skibber." [Def.'s Brief, 8/15/13, at 7.][19] In the Defendant's brief, he focuses his claim "in relation to the Skibbers" as regarding counsel's post-trial failure to file a claim based on newly discovered evidence. [Id. at 10.] The Defendant acknowledges that this issue essentially rehashes his newly discovered evidence claims. [Id.]

We note, again, that the Defendant presented no testimony from Ventre. Thus, the Defendant immediately fails to meet his burden of proof regarding that claim.

Also, as discussed above, the Defendant presented inadmissible hearsay from Shawn and Bonnie Skibber. Our evidentiary ruling precludes us from considering these witnesses' testimony for the truth of the matter asserted, i.e. Lynch's guilt. We cannot assess the probability of a different verdict without consideration of the Defendant's underlying theory of prejudice.

Thus, we must deny this claim because no evidence is before us which could support the prejudice prong of the ineffectiveness test.

### ii.   Failure to Call Alibi Witnesses

The Defendant claims that trial counsel was ineffective for failing to call alibi witnesses, Nancy Zaledzieski and Wanda Zaledzieski. The Defendant alleges that these witnesses could have established that he was at home during the time of the murder and provided details about a hip injury which would have made it difficult for him to commit the stabbing.

---

[19] Four pages of the Defendant's Brief consists of a lengthy quotation from his Amended PCRA Petition. [Def.'s Brief, 8/15/13, at 6-10.]

21

Counsel has a general duty to undertake reasonable investigations or make reasonable decisions that render particular investigations unnecessary. Com. v. Basemore, 744 A.2d 717, 735 (Pa. 2000). "The duty to investigate, of course, may include a duty to interview certain potential witnesses; and a prejudicial failure to fulfill this duty, unless pursuant to a reasonable strategic decision, may lead to a finding of ineffective assistance." Com. v. Johnson, 966 A.2d 523, 535-36 (Pa. 2009).

Summarizing cases in Com. v. Dennis, 950 A.2d 945 (Pa. 2008), the Pennsylvania Supreme Court opined:

> These cases ... arguably stand for the proposition that, at least where there is a limited amount of evidence of guilt, it is *per se* unreasonable not to attempt to investigate and interview known eyewitnesses in connection with defenses that hinge on the credibility of other witnesses. They do not stand, however, for the proposition that such an omission is *per se* prejudicial.

Id. at 960.

When raising a claim of ineffectiveness for the failure to call a potential witness, a petitioner satisfies the performance and prejudice requirements of the *Strickland* test by establishing that: (1) the witness existed; (2) the witness was available to testify for the defense; (3) counsel knew of, or should have known of, the existence of the witness; (4) the witness was willing to testify for the defense; and (5) the absence of the testimony of the witness was so prejudicial as to have denied the defendant a fair trial. Com. v. Sneed, 45 A.3d 1096, 1108-09 (Pa. 2012).

### a) Wanda Zaledzieski and Charles Schoch

On May 28, 2013, Wanda Zaledzieski testified regarding the Defendant's alibi. Wanda is the Defendant's mother and was living with him in July of 1992 when the murder

22

R. 040a

occurred. [N.T., 5/28/13, at 178-83.] She is married to Charles Schoch. [Id. at 179.] She and her husband retained Attorney Hood on behalf of the Defendant. [Id.][20]

Wanda testified that she and the Defendant's grandmother, Nancy Zaledzieski, wished to provide alibi testimony. They discussed the Defendant's alibi with Attorney Hood. [N.T., 5/28/13, at 179.] According to Wanda, Attorney Hood indicated they would not be good witnesses because family members would not be believable. [Id. at 186-87.][21] Prior to trial, no other discussion occurred between Attorney Hood and the Defendant's mother about her alibi testimony. [Id. at 187.] During trial the Defendant's mother reiterated her concern that she should testify to the alibi and Attorney Hood maintained that she would not be believable. [Id.]

Regarding the alibi, Wanda testified that on July 14, 1992 she picked the Defendant up from work as she normally did. [N.T., 5/28/13, at 184.] They went home. [Id.] Later, she heard the Defendant's private phone line ring in his room. [Id.] The Defendant came out and explained that he got a call from Todd Mastrobuoni and John Lynch and he was going to go out. [Id.] His mother stated she did not think that was wise but she did not forbid him from going. [See id.] Although the Defendant was 19 at that time, it was generally agreed that he would be home by midnight whenever he had to work in the morning. [Id. at 184-85.] Towards midnight, Wanda was watching television in the back parlor and she heard the Defendant talking to his grandmother in the front parlor. [Id. at 185-86.] She went out and saw that the Defendant had returned; she looked at the VCR clock and saw that it was 11:51 p.m. [Id.]

---

[20] Mr. Schoch knew Attorney Hood because Schoch remodeled an office for him. [N.T. 5/28/13 at 179.]

[21] The Defendant's grandmother, Nancy, was originally a potential alibi witness raised in this petition. She gave a deposition statement on December 29, 2000 regarding the alibi and died sometime thereafter. In contrast to Wanda and Schoch's testimony, she believed that the Defendant had gone out with his friends Monday night, July 13, coming home before midnight, and simply stayed at home Tuesday night, July 14, the night of the murder. In Wanda's testimony, she explained that Nancy was mistaken as to the night because her mother normally went out every Monday night for bingo and, once every month, she would also go out Tuesday night for bingo. [Id. at 188-89.] Thus, because she went out for bingo on Tuesday night that week as well, she had thought that the events happened on a Monday. [Id.]

23

R. 041a

Another witness also testified in support of the Defendant's alibi. Charles Schoch testified briefly at the PCRA hearing and reinforced the testimony of Nancy Zaledzieski. Schoch is the Defendant's stepfather. [N.T. 6/28/13 at 8.] Schoch lived with the Defendant and his mother in July of 1992. [Id. at 8-9.] He confirmed that the Defendant injured his leg in a fall two days prior to the murder and that the Defendant was taken to the hospital. [Id. at 9-10.] Schoch also stated that he heard the Defendant's voice in the hallway of their home on the night of the murder, at about 12:10 a.m. [Id. at 12-13.] After hearing the Defendant's voice, Schoch went back to sleep. [Id.] He testified that the drive from that location into East Stroudsburg, where the murder occurred, takes approximately 50 minutes. [Id. at 13.] Prior to trial, he informed Attorney Hood that he had heard the Defendant in the hallway at 12:10 a.m. on the night of the murder and he discussed the alibi with Attorney Hood. [Id. at 14.] Both Schoch and Nancy met with Attorney Hood to discuss the alibi. [Id. at 16-17.] However, Attorney Hood indicated that the family ought not to testify because the jury would not believe them. [Id. at 17.] Schoch raised this issue multiple times with Attorney Hood because, as he said, "[i]t disturbs me that I can't testify to something that I know to be the truth." [Id.]

Attorney Hood confirmed he had conversations with Schoch and Wanda about the alibi evidence. [N.T. 5/28/13 at 80-82.] He stated that he did not present alibi testimony because "[the Defendant] emphatically said it was the wrong night." [Id. at 88.] Attorney Hood stated:

> Mr. Hood: [The Defendant] made it clear that he did not -- early on, very, very early on that he did not want to testify. Being a defense attorney, you are then trained for ethical reasons not to go into a lot of other things because it creates problems down the road. So that's why, as bizarre as it sounds, there was never a lot of conversation about [the Defendant's] version of what happened that night, frankly, because -- again, it seems incredulous for me to say this, but it was never really discussed because he did not want to testify.

[Id. at 84.]

24

R. 042a

For the Defendant's part, he agreed with his alibi witnesses that Attorney Hood had indicated he would not call the Defendant's family because the jury would not believe them. [N.T., 6/28/13, at 50-52.]

First, the Commonwealth argues that Charles Schoch's testimony is inadmissible under the PCRA because the Defendant failed to substantially comply with his obligation to give notice of this witness and his testimony. The PCRA statute itself makes certain testimony inadmissible if the Defendant does not "substantially comply" with the requirement of first providing a proffer of the witness' testimony and certain identifying information. 42 Pa.C.S.A. § 9545(d). The Defendant's original petition did not specify the alibi witnesses, while the amended petition only specified Nancy and Wanda Zaledzieski. The Defendant, at least, contemplated calling Schoch as early as the May 28, 2013 hearing as he sequestered Schoch on that date. [Id. at 8.] Two days prior to the evidentiary hearing in which Schoch testified, the Defendant filed a supplemental certified witness list which named Schoch for the first time. In sum, the Commonwealth had prior notice of Charles Schoch, albeit short notice.

While the Defendant's delay in giving notice is not the best practice, we do not see how this fails to 'substantially' comply with his obligation. We can discern no prejudice to the Commonwealth in these circumstances. Schoch's testimony was not technical, complex, or long. It dealt mostly with his recollection while in bed the night of the murder and did not suggest another witness could confirm or deny what he observed. Moreover, the Commonwealth was, essentially, already aware of what Schoch's testimony would be since it mainly served to corroborate the testimony of Nancy Zaledzieski. While the Defendant, perhaps, thought he might call Schoch some time ago, we do not have any substantial reason to suspect that the delay in giving notice was part of some inappropriate strategy to subvert the Commonwealth's case.

25

R. 043a

Thus, we deny the Commonwealth's motion to exclude Schoch's testimony under 42 Pa.C.S.A. § 9545(d).

Next, we will assess whether the Defendant has proved the elements of an ineffectiveness claim.

The Defendant's claim plainly has arguable merit because a valid alibi would be important evidence at trial. Based on the testimony at the PCRA hearings, we find that Wanda and Schoch existed and were available and willing to testify at trial. We must also answer whether Attorney Hood's conduct twenty years ago lacked a reasonable basis.

Failure to call a witness is not *per se* ineffective assistance of counsel, for such a decision implicates matters of trial strategy. Com. v. Washington, 927 A.2d 586, 599 (Pa. 2007); Com. v. Lilliock, 740 A.2d 237, 245 (Pa. Super. Ct. 1999) (holding same for alibi witnesses). It is a PCRA petitioner's burden to demonstrate that trial counsel had no reasonable basis for declining to call a witness. Washington, 927 A.2d at 599. Trial counsel may act reasonably when counsel declines to call a witnesses because the witness would not be credible. See Com. v. Wallace, 724 A.2d 916, 922 (Pa. 1999) (reasonable conduct in determining not to put on alibi witness who was not credible due to inconsistencies).

The pre-trial discussions with Attorney Hood have been obscured over time. We credit defense counsel's testimony that he discussed what happened the night of the murder with his client, that he talked to the client's family about an alibi defense, and that his client told him the proposed alibi was for the wrong night. We do not credit the Defendant's witnesses where they have said that Attorney Hood solely relied on the diminished credibility of family members in choosing not to call them. We surmise that a multitude of other factors most likely contributed to that decision. Wanda and Schoch either have not recalled the full explanation of

26

R. 044a

Attorney Hood's reasoning, or Attorney Hood did not provide a full account of his reasoning to them. Moreover, twenty years is a significant amount of time from which to recall the fine points of particular conversations.

In this case, the partially recalled conversations by the Defendant's family, as well as the faded memory of Attorney Hood himself do not meet the Defendant's burden of proof. The law presumes that defense counsel makes reasonable strategic decisions on issues of trial strategy. Attorney Hood engaged in such a decision when he elected to not call purported alibi witnesses. One possibility is that, consistent with defense counsel's recollection, he did not call the witnesses because the Defendant protested that the alibi was for the wrong night. Alternatively, consistent with defense counsel's theory of the case, counsel might have avoided this alibi testimony because it would establish that the Defendant was in the area of the crime on the night of the murder. It is prudent to not present an alibi for an incorrect time period; defense counsel could also appropriately rely on his client to tell him whether this time period was correct. It would also be within counsel's discretion to avoid emphasizing certain damaging facts for the jury, such as the Defendant's presence at the scene. Either way, the decision was within counsel's reasonable discretion. It is too speculative for us to guess at that reasoning twenty years later, and neither does it appear that Attorney Hood made an unreasonable choice. The Defendant has presented nothing which convinces us otherwise.

Thus, we find that the Defendant has failed to rebut the presumption that his counsel made reasonable decisions regarding trial strategy. We reach a similar conclusion for the Defendant's alibi theory based on his pelvic injury.

Wanda also testified that the Defendant fell 15 feet and hurt his pelvis a few days before the murder. [N.T. 5/28/13 at 180-81.] She said that the Defendant appeared to be in a lot

27

R. 045a

of pain and was dragging his leg and limping at times. [Id. at 182.] On Sunday, the day after the fall, she took the Defendant to the hospital. [Id. at 181.] The hospital notes and patient treatment instructions indicated that the Defendant was complaining of pain, but they do not indicate that much treatment was required. [See Com.'s Exh 1 and 2.] An x-ray determined that the Defendant had no fractures. He was prescribed a pain medication, Naproxen, and discharged the same day. Furthermore, the Defendant went to work on Monday and Tuesday where he would stand all day. [Id. at 215.] After work on Monday, while he was still limping, the Defendant elected to browse a music store with his mother for 45 minutes. [Id.] The Defendant stopped limping in five or six days. [Id. at 182-83.] Attorney Hood relates that the Defendant never told him about the hip injury, while the Defendant counters that he did. [N.T. 5/28/13 at 93, (Hood); N.T. 6/28/13 at 99 (Defendant)].

Trustworthy alibi evidence that the Defendant was incapable of running after the victim would be pertinent and important at trial and, thus, this claim has arguable merit. However, we do not believe Attorney Hood acted unreasonably in failing to discover and present this evidence.

Wanda and Schoch did not testify that they discussed the Defendant's injury with Attorney Hood. Moreover, the Defendant recovered from his limp in five or six days and so an injury would not have been apparent to Attorney Hood upon meeting with the Defendant in person. Neither was there any evidence that the Defendant sustained a lasting injury, we merely have the Defendant's word now that he brought the injury to Attorney Hood's attention. The Commonwealth's cross-examination helped to suggest that this injury was de minimis. We do not believe that the injury was brought to Attorney Hood's attention. The Defendant's testimony

28

R. 046a

to the contrary is self-serving and we see no additional circumstances which suggest we should credit it.

A reasonable attorney presents the best trial strategy he can conceive of to effectuate his client's interests. This does not include presenting an alibi theory that there is no reason to suspect exists and no grounds on which counsel would have discovered it. See Com. v. Tedford, 960 A.2d 1, 39 (Pa. 2008) (counsel cannot be deemed ineffective for failing to investigate and introduce information he could not possibly have known about, so long as counsel's decision not to investigate was reasonable).[22]

In sum, we find that counsel's conduct did not lack a reasonable basis for not presenting evidence of the Defendant's pelvic injury.

### iii.    Failure to Call Defendant

The Defendant also claims that counsel was deficient in failing to call him to testify on his own behalf. The Defendant argues he could have testified to his innocence, the existence of grounds for bias against him by John Lynch and Tina Worth, and the existence of his "hip injury." [Def.'s Brief 8/15/13 at 7.]

With respect to the Defendant's injury, we deny this claim for the reasons discussed above. There was simply no credible evidence that the injury was brought to Attorney Hood's attention or would reasonably have been discovered by him. Thus, there would have been no reason to call the Defendant to testify to this. Next, we discuss the Defendant's contention that Attorney Hood should have put him on the stand so he could explain his innocence and bolster attacks on the credibility of Lynch and Worth.

---

[22] Moreover, it seems likely that the Defendant's injury was not brought to Attorney Hood's attention because it was not serious enough to have actually impeded the stabbing.

R. 047a

It is an elementary premise in our law that the decision whether to testify in one's own behalf is ultimately to be made by the accused after full consultation with counsel. <u>Com. v. Bazabe</u>, 590 A.2d 1298, 1301 (Pa. Super. Ct. 1991). Attorney Hood indicated his awareness of this rule and that he would have put the Defendant on the stand, if the Defendant wished to testify. However, the Defendant did not wish to testify.

The Defendant counters that he asked Attorney Hood if he was going to testify and Attorney Hood indicated he would not call him because his testimony was unnecessary. Though the Defendant stated that the defense investigator was surprised when he heard that the Defendant was not going to testify, the Defendant never called the investigator for testimony. Neither did the Defendant's other witnesses provide any corroboration on this point.

We credit Attorney Hood's assertion that the Defendant did not wish to testify and we find that it was reasonable for Attorney Hood to defer to his client's decision not to testify. While Attorney Hood did not discuss what advice he gave to the Defendant regarding his testimony, we are aware that a defendant often will be significantly undermined in cross-examination. Moreover, here the evidence against this Defendant was already relatively weak and Attorney Hood pursued pertinent cross-examination of the Commonwealth's essential witnesses. Under counsel's cross-examination, Tina Worth repeatedly admitted to lying to the police and John Lynch admitted involvement in a different stabbing. In these circumstances, it was a reasonable trial strategy to keep the Defendant off the stand.

In sum, we deny this claim because Attorney Hood reasonably relied on his client's representations that he did not wish to testify and, furthermore, it was a reasonable trial strategy to not call the Defendant.

30

**R. 048a**

iv. "Skinhead" References

The Defendant claims that the prosecutor's reference at trial to "skinheads," the "skinhead organization," and "troubled youth" was impermissible character evidence and evidence of prior bad acts which would have elicited an objection from constitutionally effective trial counsel. [Def.'s Brief, 8/15/13, at 14.] This claim is related to claim five, regarding reference to skinheads in the opening statement, and we combine our consideration of that claim here.

In voir dire the prosecutor, James Gregor, Esq., stated that:

Mr. Gregor:  [T]here will be testimony in this case that one or two of the Commonwealth's witnesses, and also the defendant in this case, are members of an organization called the Skinheads. This case is not about skinheads, but the case will make reference to individuals of that organization.

Does anybody here, simply because somebody may be, or is alleged to be, a member of that organization, feel that they cannot be telling the truth, that they cannot render truthful testimony simply because they belong to such an organization?

[N.T. 5/6/93 at 32.]

Five or six jurors responded and said that they might not be able to view skinheads impartially or had strong opinions about them. [N.T. 5/6/93 at 32-42.] After discussions at sidebar, most or all of the prospective jurors were stricken for cause. [Id.][23] No other jurors indicated that they had prejudice concerns. [Id. at 42.]

Among the jurors who indicated they might be prejudiced, one prospective juror approached the bench in hysterical tears and could not compose herself enough to explain her concern; she was stricken for cause. [N.T. 5/6/93 at 37-38.] Another juror explained that she understood that skinheads believe in Hitler's ideology and was, therefore, prejudiced against them; she was stricken for cause. [Id. at 40-42.] Other

---

[23] It is unclear whether there were five or six jurors who had issues with skinheads because one juror's name was not recorded and neither was it clear whether any motion to strike was made for that juror. [N.T. 3/6/93 at 40-41.]

31

R. 049a

jurors indicated their inability to credit what skinheads say or their partiality against the skinhead organization. [Id. at 32-42.] During sidebar discussions, the Commonwealth and the Court both expressed the understanding that evidence mentioning skinheads would be offered merely to explain the connection between the Defendant and the witnesses, and not to suggest an ideological motive. [Id. at 33, 36.]

Trial counsel renewed this line of questioning and asked the venire if membership or affiliation with the skinheads would make any venireperson more likely to convict or "would anybody at all be prejudiced in any way by any testimony that Mr. Zeledjieski may be affiliated with any skinhead organization." [N.T. 5/6/93 at 59-60.] No venireperson responded to either of these questions. [Id. at 60.]

At trial, the Commonwealth mentioned 'skinheads' in its opening statement:

Mr. Gregor: And [Tina Worth] will testify that she saw the defendant in this case, Mr. Zeledjieski, with a knife, tucking a knife into his pocket. You will listen to her testimony. And she believes she saw bloodstains on the bottom line of his shirt. She will also tell you that she heard him say, in the conversation that, "The homeless bastard deserved it anyway."

You'll also hear from Mr. John Lynch, who was at the scene. And as I indicated, you're not going to like the witnesses we have. They met through an organization known as the skinheads. This is, in a sense, a trial of troubled youth.

They joined an organization because they wanted something to belong to. That organization that they chose happened to be the skinhead organization. That's how these individuals met and became friends.

[N.T. 5/24/93 at 80.]

At trial, the Commonwealth elicited Lynch's testimony that the Defendant and he were both members of the skinheads. [N.T., 5/24/93, at 175.] The direct questioning of Lynch also revealed that he and the Defendant were friends from school prior to the involvement with the skinheads. [Id.] Mastrobuoni, on the other hand, appeared to know the Defendant exclusively through the skinhead gang. [Id. at 225.]

32

R. 050a

Skinheads were also mentioned in the Commonwealth's closing statement:

Mr. Gregor: It was like pulling teeth. They didn't want to rat on a buddy. They didn't want to be a snitch. Again because the environment they belong in the world they chose.

I told you in the opening statement that this is a case about troubled youth and just look at the people that they hang out with. This is not a case about skinheads. We're not talking about this as a motive but certainly they were a factor. They lived at a skinhead flophouse in Allentown. That's where some of the conversation took place. We're not talking about this as a motive; that it was a skinhead killing. But think about it.

We don't know what the motive was. We don't have to prove motive. We have no clue what the motive would be in this case. It's just a senseless brutal act committed, we submitted, by Matthew Zeledjieski.

[N.T. 5/26/93 at 488-89.]

Mr. Gregor went on to argue that the jury should not be swayed by Lynch's connection with a separate stabbing, because: "Well, maybe it is just a plain coincidence. Look at who he hangs with. He hangs out with a violent group of people. It's a skinhead flophouse." [Id. at 490.]

At the PCRA hearing, trial counsel recalled the skinhead issue; counsel stated that "it was the Judge's opinion that we were going to limit it to the best extent possible, but there was going to be no way to -- to coin the phrase, to tap dance around that issue because it was pretty obvious." [N.T., 5/28/13, at 25.] Counsel noted that he was concerned about the jury's perception and that the trial had actually been moved to another courtroom to better conceal from the jury some tattoos on the Defendant's knuckles which spell out 'skinhead.' [Id. at 26, 92-93.] Trial counsel did not file a motion in limine and neither did he enter any objection on the record. Regarding his reasons for not challenging the references to skinheads, counsel provided the following testimony:

Mr. Farrell: And we would agree that you did not object at that time or move for a mistrial?

33

R. 051a

Mr. Hood: No, because for the reason I said. Everybody knew Mr. Lynch was going to testify. There was no way this evidence was going to be kept out. I mean --

Mr. Farrell: Well, did you ask the Court to take it out, to keep it out? I mean, obviously with all --

Mr. Hood: You asked me that several times. I have no recollection of formally filing a motion in limine. I do know the issue was discussed at length, and my general recollection is since Lynch was going to testify it was going to come out. There was no way to avoid it.

Mr. Farrell: Okay.

Mr. Hood: And that was part of the Defense strategy of who Lynch was. I mean, there was just no way around it. I understand the concern, but if I was going to call Lynch as a witness, assuming Mr. Gregor didn't, it was going to have

to be dealt with.

[N.T., 5/28/13, at 27-28.]

The Pennsylvania Rules of Evidence prohibit certain propensity evidence:

**(a) Character Evidence.**
*(1) Prohibited Uses.* Evidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait.
...
*(3) Exceptions for a Witness.* Evidence of a witness's character may be admitted under Rules 607, 608, and 609.
...
**(b) Crimes, Wrongs or Other Acts.**
*(1) Prohibited Uses.* Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.
*(2) Permitted Uses.* This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. In a criminal case this evidence is admissible only if the probative value of the evidence outweighs its potential for unfair prejudice.

Pa.R.E. 404(b) (last amendment effective March 18, 2013); see also Com. v. Morris, 425 A.2d

715, 720 (Pa. 1981) (stating similar standard as longstanding policy in Pennsylvania).

While the Rule specifies purposes for which prior bad acts are admissible, this list is non-

exclusive. Com. v. Brown, 52 A.3d 320, 325 (Pa. Super. Ct. 2012). Courts have enunciated

34

**R. 052a**

other permissible purposes for which to admit prior bad acts, including "situations where the distinct crimes were part of a chain or sequence of events which formed the history of the case and were part of its natural development (sometimes called "res gestae" exception)." Com. v. Billa, 555 A.2d 835, 840 (Pa. 1989).[24] The res gestae exception has also been referred to as the "complete story" rationale; evidence of other criminal acts is admissible "to complete the story of the crime on trial by proving its immediate context of happenings near in time and place." Com. v. Lark, 543 A.2d 491, 497 (Pa. 1988).

The courts have also specifically endorsed the admission of gang evidence for certain purposes. Com. v. Brewington, 740 A.2d 247, 252 (Pa. Super. Ct. 1999); Com. v. Whitfield, 419 A.2d 27, 29 (Pa. Super. Ct. 1980). In Brewington, the Commonwealth properly introduced gang evidence that its witness had been threatened in order to explain why its witness recanted his former testimony. Brewington, 740 A.2d at 252. In Whitfield, the Commonwealth properly introduced gang evidence to explain its witnesses reluctance to implicate the Defendant. Com. v. Whitfield, 419 A.2d at 29.

Evidence that the Defendant belonged to the skinheads was character evidence, as well as evidence of a 'wrong or other act' which supports the notion that he had a propensity for violence. It is common to associate 'skinheads' with violence, as shown by the concerns of the prosecutor and defense counsel, as well as the acknowledgements by multiple prospective jurors of their concern that they would be biased. The Commonwealth stated it was not suggesting this as a motive, although certain prospective jurors (who were stricken for cause) saw an explanation for the killing based upon the Defendant's membership with the skinheads.[25]

---

[24] Res gestae is Latin for "things done." RES GESTAE, Black's Law Dictionary (9th ed. 2009).

[25] Despite the Commonwealth's representation that it was not arguing that homelessness was a motive, the Commonwealth cross-examined Detective Joseph Hanna, a defense witness, and inquired whether a homeless

35

**R. 053a**

Based on Attorney Hood's testimony and the comments on the record during voir dire, the parties and the Court were concerned with providing a 'complete story' when Lynch and the other witnesses testified. The Defendant, Lynch, and Mastrobuoni had been members of the skinheads and, thus, discussing skinheads' membership was part of showing what had happened. The Commonwealth also used this evidence to help explain its witnesses' reluctance in testifying, which is an admissible purpose explicitly endorsed by the caselaw. Com. v. Whitfield, 419 A.2d at 29. Despite these grounds for admission, an objection to skinhead references still had arguable merit. Rule 404(b) necessarily considers whether the probative value of the evidence outweighs its unfair prejudice. Unfair prejudice includes prejudices from propensity evidence, particularly where the Defendant was a member of so infamous a group.

Nevertheless, simply because an objection has arguable merit does not require counsel to lodge such an objection. Defense counsel engaged in a decision regarding trial strategy in electing to not raise an objection. First, counsel elected not to file a motion or 'formally' object because this issue was discussed with the Court, off the record, and counsel apparently believed any objection would be fruitless. More importantly, revealing the involvement with the skinhead organization was part of defense counsel's strategy to discredit the Commonwealth's witnesses and shift the blame to Lynch. This strategic choice was reasonable. Although Lynch's propensity for violence was, itself, an inadmissible purpose, the involvement with an organized gang might have helped support an inference of a conspiracy against the Defendant or raised additional grounds on which to infer the witnesses' motives to lie. It was within the range of reasonable judgment for counsel to think this would be of a greater detriment to the Commonwealth's witnesses, than it would be for his client. Moreover,

---

person would fit into the skinheads' "constitution" and "creed." [T.T., 5/25/13, at 441-42.] This question had no apparent relation to direct examination.

36

R. 054a

even despite his conviction, it is not clear that trial counsel's choice was any significant detriment to the defense.

Accordingly, we find that it was reasonable attorney conduct for trial counsel to not object to the skinhead references.

v. **Commonwealth's Opening Statement**

In the Defendant's fifth claim, he restates that trial counsel was ineffective for not objecting to the skinhead references and goes on to add that counsel was also ineffective in failing to object to the opening statement that this was 'a trial of troubled youth.' To the extent that this claim raises the Commonwealth's references to skinheads, we have already discussed this issue in section iv, above.

Remarks in a prosecutor's opening statement must be fair deductions from the evidence which he in good faith plans to introduce and not mere assertions designed to inflame the passions of the jury. Com. v. Hughes, 383 A.2d 882, 886 (Pa. 1978). The prosecution is not, however, required to prove conclusively all statements made during the opening argument. Com. v. Farquharson, 354 A.2d 545, 552 (Pa. 1976). As long as there is a good faith and reasonable basis to believe that a certain fact will be established, reference may properly be made to it during the opening argument. Com. v. Jones, 610 A.2d 931, 938 (Pa. 1992). Even if an opening argument is improper, relief will be granted only where the unavoidable effect is to so prejudice the factfinder as to render it incapable of objective judgment. Id. at 938-39.

While not precisely on point in regards to trial counsel's lack of objection under the Rules of Evidence, this caselaw is instructive for our inquiry.

R. 055a

Contrary to the Defendant's assertions, a "trial of troubled youth" does not immediately suggest criminal conduct.[26] Moreover, the Commonwealth's statement was a fair characterization of the evidence presented and seemed to be directed at the Commonwealth's witnesses in the context. A number of the Commonwealth's witnesses were young and had multiple 'troubles' which were presented to the jury in testimony. These included Tina Worth's lying to the police and John Lynch's involvement in a second stabbing. Thus, the prosecutor's comments had a basis in fact. Furthermore, the comment was in keeping with trial counsel's theory of the case. Trial counsel wished to propose the notion that the Commonwealth's witnesses were not credible and were conspiring against the Defendant in order to protect one of their own. It was a reasonable trial strategy to not object to the 'troubled youth' comment in line with this proposed defense. Neither can we see any potential for prejudice from this comment.

Accordingly, the Defendant fails to establish any prong of the ineffectiveness test and we will deny this claim.

## vi. Admission of Lynch's Videotaped Interview

The Defendant claims that trial counsel was ineffective for failing to object to the admission of videotaped testimony by John Lynch "on all proper evidentiary grounds and all constitutional grounds (specifically, violation of the right to confrontation under the United States and Pennsylvania constitutions)." [Def.'s Brief, 8/15/13, at 7.] As the Commonwealth correctly points out, trial counsel did object to admission of the videotaped statement (specifically, on grounds of hearsay and relevance),[27] appealed the issue, and the Superior Court

---

[26] Even if the statement did suggest crime in the mind of some juror, it is so vague that it is highly unlikely to have prejudiced any jury member against the Defendant.
[27] [N.T., 5/25/93, at 312.]

38

R. 056a

affirmed in an unpublished opinion.[28]  Subsequently, the Pennsylvania Supreme Court denied appeal.[29]  The Defendant cites no Rule or caselaw supporting his claim that trial counsel could have objected based on the Confrontation Clause or other evidentiary grounds.

At trial, Lynch's videotaped statement to a police investigator was admitted as a prior consistent statement after trial counsel cross-examined Lynch in order to suggest that he fabricated his version of the murder.

The Commonwealth first argues that this claim must fail because trial counsel did object and his objection and appeal means this issue was "previously litigated."  The Commonwealth cites 42 Pa.C.S.A. § 9544(a)(2) in support of its position.

The PCRA precludes review of certain claims that were 'previously litigated,' stating that:

> **(a) General rule.**--To be eligible for relief under this subchapter, the petitioner must plead and prove by a preponderance of the evidence all of the following:
> ...
> (3) That the allegation of error has not been previously litigated or waived.

42 Pa.C.S.A. § 9543(a).

The statute goes on to define 'previously litigated,' in relevant part stating that:

> **(a) Previous litigation.**--For purposes of this subchapter, an issue has been previously litigated if:
> ...
> (2) the highest appellate court in which the petitioner could have had review as a matter of right has ruled on the merits of the issue; or
> ...

42 Pa.C.S.A. § 9544(a).

A Sixth Amendment claim of ineffectiveness raises a distinct legal ground for purposes of state PCRA review under § 9544(a)(2). Com. v. Collins, 888 A.2d 564, 573 (Pa. 2005). Ultimately,

---

[28] Com. v. Zeledjieski, 660 A.2d 126 (Pa. Super. Ct. 1995).  This unpublished opinion was entered in the record. It relies upon the trial court's opinion and order dated April 15, 1994, which is also of record.
[29] Com. v. Zeledjieski, 663 A.2d 691 (Pa. 1995).

39

R. 057a

the claim may fail on the arguable merit or prejudice prong for the reasons discussed on direct appeal, but a Sixth Amendment claim raises a distinct issue for purposes of the PCRA and must be treated as such. Id.

Here, the issues of hearsay and prior consistent statements were previously litigated in direct appeal with respect to Lynch's videotaped testimony. The Defendant's ineffectiveness claim for failure to object based on the Confrontation Clause, however, was not previously litigated and we must address that claim.

Even though the Defendant's claim was not previously litigated, neither has he litigated it here. The Defendant's PCRA petition and brief raises a mere, conclusory allegation that the admitted video testimony violated the Confrontation Clause. No testimony at the PCRA hearing elicited facts or suggested theory in support of this claim and, as we have noted, the Defendant cites no caselaw and makes no argument. At trial, Lynch was present in court and available for further cross-examination. The video itself was only introduced to rehabilitate Lynch after his initial cross-examination. Furthermore, an officer's single statement at the end of the interview "I believe you" does little to suggest that the jury's role was subverted or that this caused them to be become prejudiced against the Defendant.[30] Considering these circumstances, it is unclear how this situation could have violated the federal or state constitutional guarantees to confrontation.

Accordingly, the Defendant has utterly failed in meeting his burden of proof with respect to all the elements of this ineffectiveness claim and we deny relief.

vii.    **Statements by Police on Lynch's Videotaped Interview**

Again, addressing Lynch's videotaped interview discussed in section vi, the Defendant further specifies that trial counsel was ineffective for not objecting to the officer's

---

[30] The video was played at trial and the entire interview was recorded by the court reporter. [N.T. 3/25/93, at 355.]

R. 058a

videotaped statement at trial that he knew Lynch was not guilty of the murder. [Def.'s Brief, 8/15/13, at 8.]

The videotape played at trial contains no such statement.

Accordingly, this claim fails for want of proof of the underlying fact.

### viii. Admission of Defendant's Videotaped Statement

The Defendant also challenges his trial counsel's failure to object to the admission of his own videotaped statement. The Defendant argues that the videotape only showed the officer's belief that the Defendant was involved in the murder and that the officer believed the Defendant was guilty. [Def.'s Brief, 8/15/13, at 8.]

The video interview was very short, less than five minutes, and contained no inculpatory statements by the Defendant whatsoever. [N.T. 5/25/93, at 358-61.] The video contains no helpful testimony for the Commonwealth, consisting entirely of statements by the Defendant that he did not commit the murder, does not know what happened, and does not recall where he was due to his drinking habits. [Id.] On the videotape itself the interviewing officer, Sergeant John Stack, never states a belief about the Defendant's guilt. [Id.] Any implicit anger expressed by Sergeant Stack supported trial counsel's strategy to show the jury that the investigation was hasty and unfairly favored Lynch. [N.T., 5/28/13, at 104-106.] Trial counsel's cross-examination advanced this theory with a measure of success.

On cross-examination, trial counsel successfully elicited that Sergeant Stack had terminated the interview, that Sergeant Stack made little or no attempt to scrutinize the Defendant's statements per usual police practices, and that Sergeant Stack did not search for the murder weapon, in part, because he credited Lynch's statement that the Defendant had disposed of it. [N.T., 5/25/93, at 388-90.]

41

R. 059a

Considering these circumstances, we see nothing on which to conclude that Attorney Hood acted unreasonably when he did not object to the videotaped interview of the Defendant. It was a reasonable trial strategy, moreover, to use the video in order to undermine the credibility of Sergeant Stack, per the defense's theory that Lynch was the real murderer and was merely favored in the investigation.

Accordingly, we deny the Defendant's ineffectiveness claim because trial counsel's conduct was reasonable as a matter of trial strategy.

ix.    **Comments by Sergeant Stack**

The Defendant claims that trial counsel was ineffective because "[c]ounsel failed to object and move to strike and seek a cautionary instruction for Detective Stack's non-responsive, volunteered statement that he believed John Lynch to be a truthful individual." [Def.'s Brief, 8/15/13, at 8.] In the Defendant's brief, he provides no elaboration and cites no caselaw. [Id. at 14.]

The Commonwealth argues that Sergeant Stack's actual comment was responsive to trial counsel's questioning, was offered to explain why he did not listen closely in Lynch's interview, and, moreover, was repetitive of other evidence suggesting that the Commonwealth believed Lynch's version of the events. [Com.'s Brief, 8/5/13, at un-numbered pages 44-45.]

Trial counsel and Sergeant Stack had the following exchange during cross-examination:

Mr. Hood: You weren't paying that close attention?

Sgt. Stack: I wasn't paying real close attention. I just did [the interview with Lynch] as a favor for Detective Hanna. I remember some of it.

Mr. Hood: At that point Mr. Lynch had already been arrested on the Rappley case; had he not?

Sgt. Stack: Yes.

42

Mr. Hood: You knew the details of the Rappley case. You knew it involved an attack?

Sgt. Stack: Yes.

Mr. Hood: You had already seen the autopsy report?

Sgt. Stack: Yes.

Mr. Hood: You knew it involved a short-bladed knife?

Sgt. Stack: Yes.

Mr. Hood: And you knew the Allentown incident involved a knife which occurred several days after the Rappley homicide but you didn't think it was important?

Sgt. Stack: Didn't think what was important?

Mr. Hood: Whatever Mr. Lynch had to say relative to the Allentown assault?

Sgt. Stack: I wasn't listening closely to all the details, no, I wasn't.

Mr. Hood: That's because had you already concluded, in your own mind, that Mr. Zeledjieski was the perpetrator?

Sgt. Stack: I wouldn't necessarily say that. I believed most of what John Lynch told me. I found him to be an honest individual.

[N.T. 5/25/93, at 386-87.]

Sergeant Stack was not qualified as an expert but testified merely as a lay witness. [See N.T. 5/25/93, at 304.]

During the charge, the trial judge instructed the jury that "[t]he matter of credibility of a witness; that is, whether his or her testimony is believable and accurate in whole or in part, is solely for your determination." [N.T. 5/26/93, at 502-03.]

The jury is presumed to follow the Court's instructions. Com. v. Baker, 614 A.2d 663, 672 (Pa. 1992); see also Com. v. Stokes, 839 A.2d 226, 233 (Pa. 2003) (court's instruction that a prosecutor's comments do not constitute evidence was sufficient to remove any prejudice, as a jury is presumed to follow the court's instructions).

Credibility determinations are within the sole province of the jury and a jury may believe all, part or none of the evidence presented. Com., Dep't of Gen. Servs. v. U.S. Mineral

43

R. 061a

Products Co., 927 A.2d 717, 726 (Pa. Commw. Ct. 2007). It is an encroachment upon the province of the jury to permit admission of expert testimony on the issue of a witness' credibility. Com. v. Seese, 517 A.2d 920, 922 (Pa. 1986). To permit expert testimony for the purpose of determining the credibility of a witness "would be an invitation for the trier of fact to abdicate its responsibility to ascertain the facts relying upon the questionable premise that the expert is in a better position to make such a judgment." Seese, 517 A.2d at 922 (citation omitted).

An opinion is not objectionable just because it embraces an ultimate issue. Pa.R.E. 704. Rule 704 clearly permits both expert and lay opinion testimony on issues that ultimately must be decided by the trier of fact. Com. v. Huggins, 68 A.3d 962, 967 (Pa. Super. Ct. 2013); see also Com. v. Walzack, 360 A.2d 914, 921 (Pa. 1976) (allowing expert testimony on capacity to form the specific intent to kill).

Trial counsel himself elicited the statement by Sergeant Stack when he asked whether he had concluded, at that point, that the Defendant was the murderer. Without any argument or citation to authority the Defendant has failed to satisfy us that there was arguable merit to an objection.

Moreover, the questions and answers during this cross-examination were part of trial counsel's efforts to show an improper or hastily-conducted murder investigation which involved police bias. We think this was a reasonable trial strategy. The jury, moreover, was cautioned that credibility of witnesses was an issue for their determination alone. We must presume that jury instructions are followed, without a good reason to think otherwise.

Accordingly, we deny the Defendant's ineffectiveness claim because the Defendant fails to show arguable merit for an objection, trial counsel's conduct was reasonable trial strategy, and any potential prejudice was cured by the jury instruction.

44

**R. 062a**

x. **Commonwealth's Comments on Analyses of Knives**[31]

In the Defendant's Amended PCRA Petition, he claims that trial counsel was ineffective for failing to object to certain representations by the Commonwealth and its witnesses. [Def.'s Brief, 8/15/13, at 8.] Specifically, the Commonwealth and its witnesses allegedly misrepresented that blood stain analyses regarding two different knives, one found in a sewer in East Stroudsburg and one used in the stabbing in Allentown, were inconclusive. [Id.]

At the PCRA hearing, trial counsel testified that he is not aware of any evidence or report upon which to contradict the representations that the results were inconclusive. [N.T., 5/28/13, at 107.] Before the trial court, counsel did argue that it was a *Brady* violation and a discovery violation for the Commonwealth to not have disclosed the laboratory test results of the Allentown knife (which were allegedly inconclusive), and counsel sought a new trial. [Post-Verdict Motions Opinion, 4/15/94, at 6-10.] However, the trial court denied this claim. This issue was appealed and the Superior Court affirmed.

The Defendant has not presented any expert report on the analysis of the knife and whether that analysis was any different than how the Commonwealth presented it at trial.

Considering the evidence presented, the Defendant admits that his claim "partly missed the mark as phrased" and attempts to refocus our attention on different aspects of trial counsel's conduct relating to the knives. [Def.'s Brief, 8/15/13, at 14-15.][32] However, not even the Defendant's belated attempts to 'rephrase' this claim deal with the total lack of proof regarding prejudice. As the Defendant's argument for prejudice hinges on the absence of these

---

[31] This ineffectiveness claim is interrelated with claim xi, below.

[32] Generally, the alteration of a PCRA claim is improper after the evidentiary hearing. See 42 Pa.C.S.A. § 9543(a) (stating that petitioner must "plead and prove" grounds for relief under the PCRA). It is unfair to the Commonwealth for the Defendant to be allowed to raise new claims in his brief at this time.

45

R. 063a

reports,[33] this lack of proof is fatal under the prejudice prong. Moreover, trial counsel's diligence in raising and arguing *Brady* and discovery issues clearly shows that counsel was on guard and chose a proper means of advancing the Defendant's interests with respect to the expert reports.

Accordingly, we deny the Defendant's ineffectiveness claim because he fails to prove prejudice and because the Defendant's trial counsel took reasonable action to remedy any injury to the Defendant from the lack of the expert reports.

### xi.  Lack of Expert Analysis on Allentown Knife

We have already partly discussed the facts surrounding this claim in section x, above. In claim xi, the Defendant goes on to argue that it was ineffective assistance for trial counsel to not obtain the expert report on the Allentown knife "to see if said knife matched or was consistent with serrated blade marks on the broken rib of the murder victim." [Def.'s Brief, 8/15/13, at 8.] Again, the Defendant has not produced an expert report on the Allentown knife and offers mere speculation as to such a report's contents.

Accordingly, considering this lack of proof as well as the reasoning in section x, we deny this ineffectiveness claim because the Defendant fails to prove prejudice.

### xii.  Cross-Examination of Todd Mastrobuoni

Next, the Defendant claims that trial counsel was ineffective for failing to adequately cross-examine Todd Mastrobuoni regarding that witness' unresolved assault charge,

---

[33] In the Defendant's brief, he adds that trial counsel "failed to object to the Allentown detective's testimony on cross examination to the hearsay statement of the stabbing victim that it was the person in the cab with John Lynch [that] stabbed him." [Def.'s Brief, 8/15/13, at 15.] This clearly raises new ground and does not merely 'rephrase' the original claim. The Defendant would need to amend his PCRA petition to add this claim. Furthermore, the evidentiary hearing has already been held without any notice that trial counsel should be questioned on this topic. Neither has the Commonwealth been given an opportunity to respond in its own briefing. Thus, we will not consider the Defendant's new claim.

R. 064a

plea bargain, and expectation of lenient treatment. [Def.'s Brief, 8/15/13, at 8-9.] The Defendant emphasizes the importance of the right to confrontation in his brief.

Initially, trial counsel's cross-examination of Mastrobuoni elicited a number of facts to suggest Mastrobuoni's motive to lie, such as that Mastrobuoni and Lynch were close friends at the time, that they were planning on living together in Atlanta, that he was closer to Lynch than the Defendant, and that he had not even seen the Defendant for some months before the night of the murder. [N.T., 5/25/93, at 236-38.] Somewhat unsuccessfully, counsel also delved into a discussion of facts about a robbery, explored previously on the cross-examination of Tina Worth, suggesting that Worth and Mastrobuoni might have been involved in the robbery to get Lynch out of jail following his arrest in this case. [Id. at 245-49.] The cross-examination ended with the following exchange:

> Mr. Hood: Have you talked to anyone about receiving favorable treatment regarding the situation you may be involved in?
>
> Mastrobuoni: I said something to my friend, Jeremy. I was hoping maybe that me testifying, whether or not there was, that maybe they'd, you know, lessen my sentence, but not anything that, you know, that was – either way, I was testifying.
>
> Mr. Hood: The case that we're talking about, that's the attempted aggravated assault charges that have been filed against you?
>
> Mastrobuoni: Yes, sir.
>
> Mr. Hood: Basically you got into an altercation with a stranger on the street?
>
> Mastrobuoni: Yes, sir.
>
> Mr. Hood: And you took a knife out of your pocket?
>
> Mastrobuoni: Um, yeah.
>
> Mr. Hood: You had a knife?
>
> Mastrobuoni: Yes, sir.
>
> Mr. Hood: You showed it to him and everybody –
>
> Mr. Gregor: I am going to object. It's not been on direct whatsoever.
>
> Mastrobuoni: Could I explain something?
>
> The Court: Just a moment. Wait

47

**R. 065a**

Mr. Hood: It goes to his credibility. He's testified he does not have any deals when he does have a situation where he's looking for favorable treatment. I think it's relative. I am not going to argue he's a bad person.

Mr. Gregor: You're putting him in a position. These are just charges and he may make statements which could be used against him. In fairness to the witness, I would have to advise him of his rights, and anything he does say under oath could be used against him.

Mr. Hood: I will move on. With that item, I have nothing further.

– REDIRECT EXAMINATION –

Mr. Gregor: These charges you're facing, that's something that just recently occurred?

Mastrobuoni: Yes.

Mr. Gregor: There's been no talk whatsoever about any type of leniency or deals as far as these new charges filed against you; is that correct?

Mastrobuoni: That's correct.

[N.T., 5/24/93, at 249-51.]

The trial court never ruled on the Commonwealth's objection.

At the PCRA hearing, trial counsel stated that he did not press for a ruling because he had made his point and considered it better if Mastrobuoni did not answer the question. [N.T., 5/28/13, at 76-77.] Counsel later stated "I would have liked to have had more ammunition and done more damage to him, but it wasn't there." [Id. at 113.]

Cross-examination is clearly within the province of trial counsel. Com. v. Smith, 17 A.3d 873, 912 (Pa. 2011).

Trial counsel may be ineffective for inadequate cross-examination. See Com. v. Murphy, 591 A.2d 278, 280 (Pa. 1991) (ineffective assistance for deficient cross-examination); Com. v. Baxter, 640 A.2d 1271, 1274 (Pa. 1994) (same).

"Counsel is not obliged to pursue unpromising avenues of impeachment." Com. v. Lesko, 15 A.3d 345, 394 (Pa. 2011). However, even if the prosecution made no promises to the witness, cross-examination remains important because "the witness may hope for favorable

48

**R. 066a**

treatment by testifying favorably for the prosecution." Com. v. Kimball, 724 A.2d 326, 333 (Pa. 1999).

In Murphy, trial counsel's conduct fell below the constitutionally-required, minimum standards when he failed to adequately cross-examine the Commonwealth's primary witness in a murder case. The witness was a juvenile at the time, she was on juvenile probation, and she was the only witness to connect the defendant with the murder. Com. v. Murphy, 591 A.2d 278, 280-81 (Pa. 1991). The witness only identified the defendant four years later, when she was re-interviewed by the police. Id. at 280. Counsel attacked the witness's credibility under the theory of mistaken identity "by questioning her ability to view the scene of the crime, her age at the time of the crime, and her failure to identify [the defendant] immediately after the crime occurred." Id. Counsel also attempted to cross-examine the witness on improper grounds by referencing her adjudication of delinquency; this method of cross-examination was successfully prevented by the Commonwealth's objection. Id. However, counsel did not pursue other legitimate methods of cross-examination, such as the witnesses' juvenile probationary status, which might have been used to show bias through an agreement with the prosecution. Id. Accordingly, the court found counsel's conduct constitutionally deficient, as well as prejudicial, and remanded for a new trial. Id. at 281.

As trial counsel put it, he had little 'ammunition' with which to discredit Mastrobuoni. The Defendant does not suggest or present what ammunition effective counsel would have been armed with.

Unlike Murphy, trial counsel cross-examined the witness on the possibility he would receive lenient treatment for his testimony. Counsel put this bias theory before the jury, although the witness did not oblige the Defendant by simply admitting this theory was correct.

49

R. 067a

The jury was evidently unconvinced by this theory or considered there to be enough credible evidence from other sources to convict. While the Defendant complains that trial counsel's cross-examination was "abject failure,"[34] an attorney's conduct is not constitutionally defective simply because a witness' credibility is not successfully undermined. In light of trial counsel's questions regarding lenient treatment and his other attempts to show bias, counsel acted reasonably to advance his client's interests during cross-examination. Furthermore, we have no reason to think that other lines of inquiry would have had substantially greater success.

Accordingly, we deny the Defendant's ineffectiveness claim because his attorney's conduct was reasonable.

### xiii. Juror Tampering

The Defendant claims that trial counsel was ineffective for not bringing evidence of "possible jury tampering or improper extrinsic influence on the jury" to the attention of the trial court. [Def.'s Brief, 8/15/13, at 9.] Specifically, the Defendant asserts that, during trial, "a corrections officer who was the husband of a juror sat with the father of John Lynch who also was a corrections officer." [Id.]

At the PCRA hearings, the Defendant testified that "somebody" told Attorney Hood about the fact that one of the jurors was the spouse of a corrections officer and that they had been seen hugging in the hallways. [N.T., 6/28/13, at 60-61.] The Defendant was not sure who related this information. According to the Defendant, Attorney Hood stated he did not want to "dirty the jury" and so did not bring it to the judge's attention. [Id. at 61.] The Defendant presented no other evidence to suggest that an actual improper influence was exerted on the jury, or even that the husband was seated with Lynch's father in the courtroom. For his part, Attorney

---

[34] [Def.'s Brief, 8/15/13, at 17.]

R. 068a

Hood had no recollection of this matter and stated that he would have brought the possibility of juror tampering before the judge. [N.T., 5/28/13, at 77-78.]

The rumor that the Defendant states he heard at trial, from an unidentified source, fails to show that a spouse of a juror was seated in the courtroom or communicating with a juror in the hallways. The Defendant presents no other evidence beyond this rumor and we are not satisfied that the Defendant has proven the underlying factual allegations. This is fatal to the arguable merit prong.

Assuming for the sake of argument that we believed the Defendant over Attorney Hood, we would not find prejudice here based on the scant factual development. The Defendant has presented no evidence on which to infer actual juror tampering or 'improper extrinsic influence' on the jury such that a mistrial would have been warranted.

Accordingly, the Defendant's ineffective assistance claim fails for want of proof regarding the arguable merit and prejudice prongs.

xiv.    **Preservation of Issues for Appeal**

For the Defendant's last ineffectiveness claim, he argues that post trial motion and appellate counsel failed to raise and preserve the issues raised in his Amended PCRA Petition. [Def.'s Brief, 8/15/13, at 9.] This issue is mere repetition because it turns on the merit of the Defendant's other claims.

Accordingly, we need not provide additional reasoning. We join our disposition of the Defendant's other claims with this one.

### E.    **Due Process: Admission of Lynch's Videotaped Statement**

Next, the Defendant claims that the trial court deprived him of his due process rights to a fair trial and to confront witnesses in showing the videotaped testimony of John Lynch

51

R. 069a

over a defense objection. [Def.'s Brief, 8/15/13, at 9.] Specifically, this was error because there was no evidentiary basis for admission and the Defendant had no opportunity to cross-examine Lynch at the time of his statements. [Id.] In the Defendant's brief, he characterizes this as "simply a variation of claim numbers 4, 5, 6, 7, 8, and 9" with no further elaboration at all. [Id. at 18.] The Defendant cites no legal authority and provides no argument.

Even though a prior testimonial statement was admitted, the person who made the statement was present and subject to cross-examination at trial. The Confrontation Clause is not violated by admitting a declarant's out-of-court statements, as long as the declarant is testifying as a witness and subject to full and effective cross-examination. California v. Green, 399 U.S. 149, 158 (1970); see also Crawford v. Washington, 541 U.S. 36, 38 (2004) (finding constitutional infirmity where witness not testifying at trial). Moreover, as per our discussion in section vi, the evidentiary issues were previously litigated and this precludes relief under the PCRA. 42 Pa.C.S.A § 9543(a)(3).

Accordingly, we can discern no possible avenue for relief and we deny this claim.

### F. Police and Prosecutorial Misconduct

The Defendant concludes his petition by claiming "[t]he police method of investigation of the murder of Neil Rappley was so incompetent or deliberately unprofessional as to give rise to a violation of petitioner's due process right to a fair trial." [Def.'s Brief, 8/15/13, at 9.]

Essentially, the Defendant asserts that he has a constitutional right to an effective criminal investigation prior to trial. He cites no authority for this claim. Even assuming that the investigations were incompetent, we know of no caselaw supporting the notion that it violates the right to a fair trial if the police conduct an inept or limited investigation. On the contrary, it

R. 070a

is defense counsel who has a duty to undertake reasonable investigations; this is the nature of our adversarial process. See Com. v. Basemore, 744 A.2d 717, 735 (Pa. 2000) (holding counsel has a duty to investigate). The Defendant's right to a fair trial is ensured by his own opportunity to investigate, have counsel, confront witnesses, and put on evidence. If the Defendant believes the due process clause creates certain minimum standards of police or prosecutor investigation, he would have to present something more than a mere conclusion that this is so. Such an interpretation would be suspect given the fact that the trial itself is intended to test the adequacy of the police investigations.

The Defendant also suggests that the police were being "deliberately unprofessional." He states that Lynch's father was a local corrections officer and suggests this might have played a role in the police's investigatory decisions. Although the Defendant did not characterize it as such, these statements might be construed as raising a claim of selective prosecution. See U.S. v. Armstrong, 517 U.S. 456, 463 (1996) (defining selective prosecution as prohibiting prosecutor from bringing charges for reasons forbidden by the Constitution). However, the Defendant has presented no evidence to support this theory.

Thus, we deny the Defendant's claim.

Accordingly, we deny the Defendant's request for PCRA Relief and will enter the following order:

R. 071a

COURT OF COMMON PLEAS OF MONROE COUNTY
FORTY-THIRD JUDICIAL DISTRICT
COMMONWEALTH OF PENNSYLVANIA

COMMONWEALTH OF PENNSYLVANIA     :     NO. 678 CRIMINAL 1992

         v.                        :

MATTHEW A. ZALEDZIESKI,        :
           Defendant.            :     PCRA, § 9543(b) MOTION

## ORDER

AND NOW, this 9th day of January, 2014, after consideration of the Commonwealth's Motion to Dismiss pursuant to 42 Pa.C.S.A. § 9543(b), said Motion is **DENIED**. Furthermore, after consideration of the Defendant's Amended PCRA Petition and Commonwealth's response thereto, said Petition is **DENIED**.

The Defendant is advised that he has thirty (30) days from the date of this Order within which to file an Appeal with the Superior Court of Pennsylvania.

**IT IS FURTHER ORDERED AND DIRECTED** that the Clerk of Courts serve a copy of this Opinion upon the Commonwealth, PCRA counsel, and the Defendant.

BY THE COURT:

MARGHERITA PATTI-WORTHINGTON, P.J.

cc:     Kelly M. Sekula, Esq., Senior Deputy Attorney General
        J. Michael Farrell, Esq., PCRA Counsel
        Matthew Zaledzieski, Defendant
        Clerk of Courts
        MPW2014-0005

54

R. 072a